**Matter of Anna S. HOWES.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1984.

Decided Feb. 16, 1984.

John C. Hunt (orally), Neville Woodruff, Legal Services for the Elderly, Inc., Augusta, for plaintiff.

William Thomas Hyde (orally), Hyde, Daye & Ferris, Skowhegan, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The appellant, Anna S. Howes, appeals from a decree of the Somerset County Probate Court appointing the appellee, Anna B. Patterson, as her guardian.[1] The judgment was rendered after an entry of default. This appeal raises both jurisdictional and constitutional issues. Because we find that the probate judge committed an abuse of discretion, we vacate the judgment.

I.

The appellant, Anna S. Howes, born August 21, 1892, is a resident of the town of Concord. Her granddaughter, Anna B. Patterson, of Burlington, North Carolina, petitioned the Somerset County Probate Court on May 4, 1983, for appointment as her grandmother's guardian. Patterson contends that she is Howes' sole heir. In the petition, she stated that Howes, a widow, had a net worth of $230,000. Patterson also submitted a letter by one Harry Lowell, D.O., addressed "to whom it may concern," which stated that Howes, while in "essentially good physical health," was "in a state of senility .... She had admitted to losing valuables around her house, including her false teeth. She admits to leaving the stove on, and other things which could endanger her well being or even her life."

On May 5, 1983, pursuant to M.R.Prob.P. 4, the appellant was given in-hand notice of a hearing scheduled for June 2, 1983. On May 9, 1983, the appellee obtained an interim order authorizing her to receive income on behalf of Howes, to cash or deposit checks, and to pay any outstanding bills. On the hearing date, June 2, 1983, a default was entered with respect to appellant Howes, and the petition by appellee Patterson seeking appointment as guardian was granted without bond. In the ensuing weeks, the appellant retained counsel and on July 1, 1983, she filed a motion for relief from judgment pursuant to M.R.Prob.P. 60(b) which was summarily denied. She appeals from the denial of this motion and from the judgment appointing the appellee as guardian.[2]

---

1. Appellee also successfully petitioned for appointment as conservator of Howes' estate. During oral argument, however, Appellant stated that she does not contest the conservatorship. We therefore address only the guardianship appointment.

2. With her appeal, the appellant filed a motion for a stay pursuant to M.R.Prob.P. 62. Rule 62, by virtue of its incorporation of M.R.Civ.P. 62(e), provides for an automatic stay of judgment pending appeal. The appellant contends that the appellee, without regard to the automatic stay provision of rule 62, continued to exercise the powers of guardianship throughout the pendency of the appeal. The appellant therefore seeks a stay from the Law Court, pursuant to M.R.Civ.P. 62(g), which allows the Court to "suspend, modify, restore, or grant an injunction or ... make any order appropriate

## II.

The appointment of a guardian for an incapacitated person affects the fundamental personal liberty of the prospective ward. The guardian is given "the same powers, rights and duties respecting his ward that a parent has respecting his unemancipated minor child ...." 18–A M.R.S.A. § 5–312(a) (1981).

To the extent that it is consistent with the terms of any order by a court of competent jurisdiction relating to detention or commitment of the ward, he is entitled to custody of the person of his ward and may establish the ward's place of abode within or without this State, and may place the ward in any hospital or other institution for care in the same manner as otherwise provided by law.

18–A M.R.S.A. § 5–312(a)(1) (1981).

18–A M.R.S.A. § 5–303(b), one of the procedures which was designed to protect the liberty interest of the alleged incapacitated person, provides:

[U]nless the allegedly incapacitated person has counsel of his own choice, [the court] may appoint an appropriate official or attorney to represent him in the proceeding .... The court may appoint a visitor who shall interview the allegedly incapacitated person ... and visit the place of abode of the person ... and submit his report in writing to the court. The person alleged to be incapacitated is entitled to be present at the hearing in person, and to see and hear all evidence bearing upon his condition. He is entitled to be represented by counsel, to present evidence, to cross-examine witnesses, including the physician and the visitor.

Although the Uniform Probate Code which Maine substantially adopted by P.L. 1979, ch. 540, § 1 (effective January 1, 1981), made the appointment of a visitor and rep-resentative mandatory, our Probate Code provided for discretionary appointment. 18–A M.R.S.A. § 5–303 comment. We therefore review to determine whether the failure to appoint a representative or visitor constituted an abuse of discretion. We conclude in this case that it did.

■ The critical test in determining the propriety of the exercise of judicial discretion is whether, under the facts and circumstances of the particular case, it is in furtherance of justice. *State v. Dyer*, 371 A.2d 1079, 1083 (Me.1977). It has been stated that:

If a Maine Probate Judge has a reasonably good sense of the participants involved in the guardianship ... proceeding and has no reason to believe that any other than the best interests of the ward are being served, he has no duty to congest the proceedings by the appointment of extra court officers.

Mitchell, *Maine Probate Manual* 454 (1983). The record in this case provides no basis for concluding that the Probate Judge had "a reasonably good sense of the participants involved" and "no reason to believe that any other than the best interest of the ward [were] being served." At the hearing, the Probate Judge knew or should have known that Anna S. Howes was 91 years of age, was forgetful for effective lengths of time, did not control her own funds as a result of an interim court order, failed to appear at the hearing, and no other relative was notified of the scheduled hearing. The physician's report before the court was brief and conclusory. From this information, where the capacity of the prospective ward to understand the implications of a default should be a central concern of the court, the ward's failure to appear, immediately raises at least two questions: 1) whether memory lapses as alleged in the petition caused the appellant to forget the time of hearing, and 2) whether because of a lack of control over

to preserve the status quo or the effectiveness of the judgment subsequently to be entered." Because we find an abuse of discretion by the presiding justice in this matter, we treat the judgment as having been stayed *ab initio,* leav-

ing the parties to seek from Probate Court an adjudication of the necessity for interim relief pending a rehearing of the petition for guardianship.

her own funds, she was unable to obtain transportation to court. In these circumstances, where information at the disposal of the court cries out for further inquiry and investigation by a visitor or representative, the bare allegation in the appellee's petition suggesting that no visitor or representative need be appointed is not authority for the court blithely to determine that a default be entered and a guardian appointed, the minimum requirements of the law as to notice having been satisfied. An adjudication of incapacity and appointment of a legal guardian, involving as it does the deprivation of personal liberty, should not hang by so slender a thread. That no other relative existed who, after the receipt of statutory notice, might have reminded the appellant of the hearing, or assisted her in attending, is further reason for staying the hand of the judge until further investigation by an appointed visitor or representative was undertaken.

We recognize that the protection of allegedly incapacitated persons from the abuses of the judicial process does not commend itself to rigid procedures, *see Danforth v. State Department of Health & Welfare,* 303 A.2d 794, 797 (Me.1973), and that the legislature sought to make the process more responsive when it granted broad discretion to the probate courts. Nevertheless, we conclude that under the circumstances of this case, the failure to appoint a visitor or representative before entry of default and appointment of guardian constituted an abuse of discretion.

Because we vacate the judgment for abuse of discretion, it is unnecessary to address the merits of the other issues raised, including the appeal from the order denying the motion under M.R.Prob.P. 60(b).

The entry is:

Judgment vacated.

Case remanded for further proceedings consistent with the opinion herein.

All concurring.