MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2014 ME 25
Docket:       Pen-12-537
Argued:       November 21, 2013
Decided:      February 18, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>LEVY</u>, SILVER, MEAD, GORMAN, and JABAR, JJ.

## GUARDIANSHIP OF ZACHARIA HARTLEY STEVENS

LEVY, J.

[¶1]   This appeal causes us to consider the scope of the Probate Court's discretion regarding transitional arrangements to reunite a child under a guardianship with his biological parent.  Kristy Lynn Bouchard Hill appeals from a judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) denying her petition to terminate the guardianship of her son, Zacharia.   Because we conclude that the court erred in denying Hill's petition without providing for transitional arrangements to restore Zacharia to Hill's custody, we vacate the judgment.

## I.  BACKGROUND

[¶2]   Zacharia was born to Kristy Hill and Benjamin Stevens in January 2009.[1]  Hill was transient at the time of Zacharia's birth, and Zacharia soon came to live with Linda and Gordon Walls, Hill's grandparents.   The Wallses became

---

[1]   Benjamin Stevens is not a party to this appeal.

temporary guardians of Zacharia in May 2009, and Zacharia has resided with them ever since. Hill saw Zacharia infrequently during the first year of his life, and in March 2010, with Hill's consent, the court appointed the Wallses as full guardians and granted Hill visitation rights. Hill did not see Zacharia from about April of 2010 until February of 2011, when she filed a petition to terminate the guardianship.

[¶3] After Hill petitioned to terminate the guardianship, a guardian ad litem (GAL) was appointed and ultimately submitted three reports to the court regarding Hill's petition.[2] The first report, issued in June 2011, concluded that Hill was unfit to regain custody of Zacharia due to her inappropriate parenting methods, her lying to the GAL, and her continued contact with her mother, who had been living with a convicted sex offender. The GAL expressed concern about Hill's "ability to keep Zacharia safe . . . and about her ability in general to parent Zacharia."

[¶4] Following the submission of her first report, the GAL provided a set of recommendations for Hill, including substance abuse and mental health counseling, parenting classes, and regular supervised visits with Zacharia. The GAL's second and third reports, submitted in March and October of 2012, detailed Hill's full compliance with the recommendations and the positive steps Hill had

---

[2] The GAL's reports also refer to a petition for adoption and termination of parental rights filed by the Wallses in 2011 that is not at issue in this appeal.

taken to prepare for reunification with Zacharia. In spite of Hill's efforts and the GAL's recommendation that her visits with Zacharia be increased, the reports noted that the Wallses had "stonewalled" Hill's attempts at reunification by cancelling visits and making Zacharia unavailable. While the GAL preferred for Zacharia to remain in a limited guardianship with increased visitation by Hill while Hill continued counseling and parenting services, the GAL felt that terminating the guardianship was the only option given the Wallses' refusal to facilitate a more gradual transition. Accordingly, the GAL's third report concluded that terminating the guardianship was in Zacharia's best interest.

[¶5] On October 4, 2012, the court held a hearing on Hill's petition for termination of the guardianship. At the hearing, the GAL testified, consistent with her reports, that the relationship between the Wallses and Hill had made it unlikely that a gradual transition of Zacharia to Hill's custody would occur as long as a guardianship remained in effect. Accordingly, the GAL recommended terminating the guardianship so that Hill could voluntarily work with parenting services providers and the Wallses to transition Zacharia to her custody.

[¶6] The court also heard testimony from the Wallses, who expressed their openness to Hill visiting Zacharia and did not dispute that Hill was capable of providing for Zacharia's physical needs. The Wallses were instead concerned that Zacharia had begun experiencing severe anxiety since starting regular supervised

visits with Hill. The Wallses testified that Zacharia was afraid of visiting Hill and had developed stuttering and sleeping problems since his visits with her began. Linda Walls testified:

> Q You have concerns about him going to Kristy's home for visits, correct?
>
> A I have concerns about him going there for a visit because Zacharia has never been away from home and, just like now, with all these visits at NOE [a social services provider] and he has to go to counseling at -- he doesn't want to go anywhere now. He just wants to stay at home. I think he would do better -- I have -- I would like to see him, in time, go there to visit at her house, but I would like to see it when he is old enough to understand where he's going and want to go. I don't want him to have to go and do something. I want him to not have to be afraid everyday that I'm going to have to go here or I'm going to have to go there. I would like to have him want to go and be comfortable to go there.
>
> Q And if he wanted to go, you would support his --
>
> A If he wanted to go, I would be happy to take him.
>
> Q And would you support his working with the [parenting] service providers?
>
> A Yes, I would.
>
> Q If he wanted to?
>
> A And I told Kristy that.
>
> Q And how do you feel about Zacharia developing a bond with Kristy and her family?
>
> A I have no problem with that. We are family. We are all family. She's my granddaughter. We're family.

[¶7] The court heard similar testimony from Verna Boyington, Zacharia's mental health therapist, who was presented as a witness by the Wallses. Boyington testified that she had observed Zacharia's anxiety when he was separated from the Wallses during visits with Hill, and that the child recognized the Wallses, not Hill,

as his parents.  The court also received in evidence a report prepared by Boyington opining that separating Zacharia from the Wallses could result in severe and irreversible attachment problems for the child, such as reactive attachment disorder.  Boyington also testified, however, that "Zacharia needs to establish a relationship with his biological mom," and her report recommended transitional services for Zacharia under a continued guardianship:

> [I]f Zacharia remains with Linda and Gordon and the adults all work together, attending training, going to counseling, [parenting] services are implemented and Zacharia begins to have home visits with his biological mother and family, Zacharia would then be able to establish a real connection to his other family.  It is then that I believe the chances of everyone winning are high . . . especially for this wonderful little three-year-old boy, named Zacharia.

[¶8]  Finally, Hill testified regarding the steps she had taken to prepare for reunification with Zacharia and her intention to keep Zacharia in counseling to help with his transition.  While Hill recognized that the transition would not be easy for Zacharia, she did not believe that the child's attachment to the Wallses would "be a problem."  Hill's testimony also revealed that she was unfamiliar with various details of Zacharia's life and that she had never been with Zacharia for more than two hours at a time.

[¶9]  On November 1, 2012, the Probate Court entered a judgment denying Hill's petition to terminate the guardianship.  The court, after making detailed findings of fact, concluded that the Wallses had met their burden of proving by a

6

preponderance of the evidence that Hill is unfit because she is unable to meet

Zacharia's needs:

> The Respondents have met their burden of establishing by a preponderance of the evidence [that] Kristy is not a fit parent for Zacharia at this time and that it is not in Zacharia's best interest to terminate the guardianship. Zacharia . . . has been living with [the Wallses] since May of 2009 when he was four months old and Kristy Hill has not provided for his physical and emotional needs since that time. By all reports and testimony he is a happy, active child. He is bonded with . . . Gordon and Linda Walls and considers them his family – he is safe and secure and all his physical and emotional needs are being met. His contact with his mother has been limited to supervised visitation. He has only been to her home once, for a two-hour visit. The Guardian ad Litem testified she had "no problems" with [the Wallses] as caregivers for the child.

> Witnesses raised significant concerns about Kristy's ability to meet Zacharia's needs, including the GAL who testified that Kristy would need in-home services. While Kristy [has] been cooperative in taking steps required of her, several witnesses testified that the increase in Zacharia's anxious and nervous behavior coincides with the increase in visitation with Kristy. The presence of a newborn in the Hill household raises additional concerns. While the guardians have not encouraged increased visitation, their hesitancy to do so must be viewed in light of the evidence presented. Their concerns are for Zacharia's safety and physical and emotional well-being.

[¶10] The court also rejected the GAL's and Boyington's recommendations

that transitional efforts be put in place, either upon termination of the guardianship

(as recommended by the GAL) or under a continued guardianship (as

recommended by Boyington):

> Title 18-A MRSA § 5-213 authorizes the Court to provide for transitional arrangements "if it determines that such arrangements will

assist the minor with a transition of custody and are in the best interests of the child." The Court declines to do so in this case. Based on the evidence presented, the GAL's recommendation for a transitional arrangement and a limited guardianship supported by in-home services is not in the best interests of the child. As she testified herself, thus far a "slow transition has not worked."

[¶11] Accordingly, the court denied Hill's petition to terminate the guardianship. Hill timely appealed from the judgment.

## II. DISCUSSION

[¶12] Hill contends that the court's denial of her petition to terminate the guardianship was based on an erroneous finding that she is unfit to parent Zacharia. Intertwined with the question of Hill's fitness was the court's decision not to provide for transitional arrangements pursuant to 18-A M.R.S. § 5-213 (2013). As explained below, because all competent evidence at trial demonstrated that Hill would be fit to parent Zacharia with the assistance of transitional arrangements, and that the implementation of such arrangements could lead to the termination of the guardianship and the return of Zacharia to Hill's custody, the court's refusal to provide for transitional arrangements had the practical effect of preventing Hill from becoming a fit parent. Accordingly, the court abused its discretion by denying transitional arrangements for Zacharia and clearly erred in

8

finding that Hill was unfit.[3]  We proceed by discussing the respective standards for instituting and terminating guardianships before turning to the issue of the court's failure to implement transitional arrangements for Zacharia.

A.    Statutory Framework Governing the Institution and Termination of Guardianships

[¶13]   The Probate Court may appoint a guardian or coguardians for an unmarried minor if certain conditions are met, including if "[a]ll parental rights of custody have been terminated or suspended by circumstance or prior court order," 18-A M.R.S. § 5-204(a) (2013), or if "[e]ach living parent whose parental rights and responsibilities have not been terminated . . . consents to the guardianship and the court finds that the consent creates a condition that is in the best interest of the child," 18-A M.R.S. § 5-204(b) (2013).   The court may also appoint a guardian without a parent's consent if

> the court finds by clear and convincing evidence that . . . a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

18-A M.R.S. § 5-204(c) (2013).

---

[3]  Because we vacate the judgment on this basis, we do not address Hill's separate contention that the standard for parental unfitness established by 22 M.R.S. § 4055(1)(B)(2)(b) (2013) applies in this case.

[¶14]   Once a guardianship is established, "[a]ny person interested in the welfare of a ward . . . may petition for removal of a guardian on the ground that removal would be in the best interest of the ward."   18-A M.R.S. § 5-212(a) (2013).[4]   In the absence of the guardian's consent, the party petitioning for termination of the guardianship bears the burden of proving, by a preponderance of the evidence, that termination would be in the best interest of the ward. 18-A M.R.S. § 5-212(d) (2013); *Guardianship of David C.*, 2010 ME 136, ¶ 3, 10 A.3d 684.  Although section 5-212(d), on its face, indicates that the sole criterion for terminating a guardianship is the best interest of the child, we have held that the statute must be read to require courts to also address parental fitness in any guardianship termination proceeding.  *Guardianship of Jeremiah T.*, 2009 ME 74, ¶¶ 26-28, 976 A.2d 955; *see also Osier v. Osier*, 410 A.2d 1027, 1029 (Me. 1980) ("[A]ny decision terminating or limiting the right of a parent to physical custody of his child also affects his constitutionally protected liberty interest in maintaining his familial relationship with the child.").  Accordingly, "although a parent seeking to terminate a guardianship in order to regain custody bears the burden of proving that termination is in his or her child's best interest pursuant to 18-A M.R.S. § 5-212(d), the party opposing the termination of the guardianship bears the burden of proving, by a preponderance of the evidence, that the parent seeking to

---

[4]  A guardian's authority terminates upon his or her removal.  18-A M.R.S. § 5-210 (2013).

terminate the guardianship is currently unfit to regain custody of the child." *Guardianship of David C.*, 2010 ME 136, ¶ 7, 10 A.3d 684. "If the party opposing termination of the guardianship fails to meet its burden of proof on this issue, the guardianship must terminate for failure to prove an essential element to maintain the guardianship." *Id.* Section 5-212(d) further provides that "[i]f the court does not terminate the guardianship, the court may dismiss subsequent petitions for termination of the guardianship unless there has been a substantial change of circumstances."

[¶15] Although the parties have asked us to determine the standard of parental fitness to apply when a parent petitions to terminate a guardianship, this appeal does not require us to define parental unfitness for purposes of all guardianship termination proceedings. Instead, this case presents a narrower question related to the court's refusal to implement transitional arrangements, where such a refusal has the practical effect of preventing the parent from becoming fit and could result in a de facto termination of the parent's parental rights. We therefore turn to the statute governing transitional arrangements, as it applies to this case.

B.      Transitional Arrangements Pursuant to 18-A M.R.S. § 5-213 and the Court's Finding of Unfitness

[¶16]  Title 18-A M.R.S. § 5-213 provides:

> In issuing, modifying or terminating an order of guardianship for a minor, the court may enter an order providing for transitional arrangements for the minor if the court determines that such arrangements will assist the minor with a transition of custody and are in the best interest of the child.  Orders providing for transitional arrangements may include, but are not limited to, rights of contact, housing, counseling or rehabilitation.

Section 5-213 thus vests discretion in the Probate Court to decide whether to implement transitional arrangements for a minor under a guardianship.  Such discretion is not without limits, however.  "The critical test in determining the propriety of the exercise of judicial discretion is whether, under the facts and circumstances of the particular case, it is in furtherance of justice."  *Matter of Howes*, 471 A.2d 689, 691 (Me. 1984).  For the following reasons, we conclude that, under the facts and circumstances of this case, the court's decision not to provide for transitional arrangements for Zacharia was not in furtherance of justice and that the court abused its discretion by refusing to terminate the guardianship without also implementing transitional arrangements.

[¶17]  First, the uncontested evidence indicated that, with the assistance of transitional arrangements, Hill would be fit to parent Zacharia.  Verna Boyington, Zacharia's mental health therapist, recommended that the Wallses retain custody of

12

Zacharia, but that the Wallses and Hill work together to attend training, counseling, and parenting services in order for Zacharia to establish a relationship with Hill. Similarly, the GAL recommended that, given Hill's record of participating in services, the guardianship be terminated so that Hill may voluntarily work with parenting services and counselors to ensure a smooth transition for Zacharia to her custody. Linda Walls likewise expressed her openness to Zacharia forming a bond with Hill with the help of transitional arrangements.

[¶18] In spite of this evidence, the court declined to implement transitional services for Zacharia and found Hill unfit to regain custody because of "concerns about [Hill's] ability to meet Zacharia's needs"; because of evidence indicating that "the increase in Zacharia's anxious and nervous behavior coincide[d] with the increase in visitation with [Hill]"; and because Zacharia has bonded with the Wallses and "considers them family." The court rejected the recommendations for transitional arrangements as being "not in the best interests of the child" because "thus far a 'slow transition has not worked.'"[5]

[¶19] In so ruling, the court placed Hill in a catch-22: the court deemed Hill unfit because the transition had not yet been successful, but Hill cannot become fit without further transitional arrangements and services. Absent the court ordering

---

[5] The court also found that Hill "has not demonstrated her ability to appropriately and safely parent Zacharia." This finding is both contrary to the applicable burden of proof, *see Guardianship of David C.*, 2010 ME 136, ¶ 7, 10 A.3d 684, and is not supported by competent evidence in the record.

transitional arrangements, there is little prospect of Hill becoming fit because the guardians have obstructed her contact with Zacharia and are unwilling to allow him to visit Hill in her home until Zacharia, who is five, decides that he wants to go. Because the court may dismiss subsequent petitions for termination of the guardianship unless there has been a substantial change of circumstances, 18-A M.R.S. § 5-212(d), the court's refusal to implement any transitional arrangements, coupled with the Wallses' resistance to making Zacharia available for visitations with Hill, creates a barrier to any prospective substantial changes of circumstances that would support termination of the guardianship. This result contravenes the purpose of 18-A M.R.S. § 5-213, which is to "give the Probate Courts another tool in fashioning an appropriate plan for the restoration of custodial care to the parents." Maine Probate and Trust Law Advisory Commission, Report to the 125th Maine Legislature, Joint Standing Commission on Judiciary, on L.D. 170, "An Act to Extend the Maximum Time Period for Powers of Attorney for Minors and Incapacitated Persons" 2 (Mar. 2011).

[¶20] When all competent evidence indicates that a parent petitioning to terminate a guardianship has fully complied with the recommendations of the guardian ad litem, is capable of providing for her child's physical care, and either is or will become capable of providing for her child's emotional needs if she is permitted to engage in transitional services, a court abuses its discretion when it

refuses to implement such arrangements. Because we conclude that the court abused its discretion in declining to implement transitional arrangements pursuant to 18-A M.R.S. § 5-213, *see Matter of Howes*, 471 A.2d at 691, it follows that the court committed clear error in finding Hill unfit, because that finding was premised upon the court's erroneous denial of transitional arrangements. For these reasons, we vacate the judgment and remand for the Probate Court to structure a transitional arrangement pursuant to 18-A M.R.S. § 5-213 that will lead toward the timely termination of the guardianship.

The entry is:

> Judgment vacated. Remanded for the Probate Court to structure a transitional arrangement that will lead toward the timely termination of the guardianship.

---

**On the briefs and at oral argument:**

Kirk D. Bloomer, Esq., Bloomer Law Office, P.A., Bangor, for appellant Kristy Lynn Bouchard Hill

Barbara A. Cardone, Esq., Lanham Blackwell, P.A., Bangor, for appellees Linda and Gordon Walls