2014 VT 41

# In re Ernest Tobias Balivet

[98 A.3d 794]

No. 13-153

Present: Robinson, J., and Zonay and Tomasi, Supr. JJ., and Morse, J. (Ret.), and Pineles, Supr. J. (Ret.), Specially Assigned

Opinion Filed May 9, 2014

*Barbara R. Blackman* of *Lynn, Lynn & Blackman, P.C.,* Burlington, for Appellant.

*P. Scott McGee* of *Hershenson, Carter, Scott & McGee, PC,* Norwich, for Appellee.

¶ 1. **Per Curiam.** The formal complaint against respondent, Judge Ernest Balivet, alleged violations of Canon 3(B)(8) of the Vermont Code of Judicial Conduct. The Judicial Conduct Board concluded that respondent violated the canon and recommended a sanction of a private letter of reprimand and conditions on the performance of judicial duties. This Court ordered review on its own motion, pursuant to Rule 12(3) of the Rules of Supreme Court for Disciplinary Control of Judges.

I.

¶ 2. The facts of the proceedings that form the basis of the disciplinary charges, as stipulated to by respondent and adopted by the Board, can be summarized as follows. In November 2001, respondent appointed a child's grandfather to be her guardian, with the consent of the child's parents.[1] On January 8, 2002, father and mother filed a motion to revoke the guardianship. On February 4, 2002, respondent held an evidentiary hearing on the motion. Respondent does not recall his words from the bench at this hearing. His handwritten notes from the hearing state, "pending ruling would be motion denied, parents were unsuitable, and exploring visitation plan."[2] The hearing was only partially recorded and it was not contemporaneously transcribed. No written decision and order issued after the hearing, and there is no entry on the docket to reflect the hearing's resolution or that a hearing was held.

¶ 3. On October 29, 2004, father filed a second motion to terminate the guardianship. Shortly thereafter, respondent appointed a guardian ad litem for the child. Respondent held a hearing in January 2005 on father's second petition to terminate the guardianship. Again, no order appears in the file, and there is no docket entry referencing the hearing, although a Notice of

---

[1] We refer to the parties in the underlying action in terms of their relationship to the minor child.

[2] Because it is difficult to decipher the handwritten notes, we accept the parties' stipulation as to the contents of the notes. We have been unable to independently validate that the notes state as clearly as the parties' stipulation suggests that the motion was or would be denied, although they do reflect a determination that the parents were not suitable and they indicate a focus on the parents' visitation plan.

Hearing was issued by the court. The parties agree that the hearing took place, and have provided a transcript of it, but do not agree as to the outcome of that hearing.

¶ 4. With the consent of the child's mother but not her father, grandfather filed an adoption petition in April 2005. In June 2005, grandfather filed a petition to terminate father's parental rights (TPR) after father refused to consent to the proposed adoption. This was the first time that respondent had encountered such a motion and he was uncertain how to proceed. In addition, respondent did not believe grandfather's motion would be successful in light of the evidence adduced at two prior evidentiary hearings. Respondent did not schedule a hearing on that motion until September 2006 — after grandfather filed a motion for a writ of mandamus in the superior court. Respondent stipulated before the Board that the hearing on grandfather's motion to terminate father's parental rights was unnecessarily delayed and that he failed to act expeditiously as required by 15A V.S.A. § 3-504(a).

¶ 5. The hearing on grandfather's motion was held over three days in September and October of 2006. At the close of the hearing, respondent orally denied grandfather's petition to terminate father's parental rights. The docket reflects that the motion to dismiss the TPR petition was granted, but there is no written order in the court file.

¶ 6. Prior to the October 2006 hearing, father raised the issue of his motion to terminate the guardianship. This motion was not entered in the docket. Respondent believes that he had denied that motion to terminate the guardianship at the January 2005 hearing. He did not address it at the TPR hearing. Grandfather appealed respondent's denial of the TPR petition to superior court.

¶ 7. The next month, grandfather also filed a motion in the probate court to stay father's attempts to terminate grandfather's guardianship. Father filed an opposition, and respondent later issued a stay of any further court action on father's attempts to terminate the guardianship pending grandfather's appeal. The date of this order is unclear as there is no docket entry or order in the file reflecting it.

¶ 8. Following the TPR hearing, in November 2006 mother filed a motion to revoke her consent to adoption, signaling to respondent that father and mother had reunited after having been sepa-

rated earlier during the guardianship. According to respondent's handwritten notes, at a status conference in April 2007, respondent indicated that he would delay ruling on mother's motion until after the appeal of grandfather's TPR motion. Respondent issued an order granting mother's motion to revoke her consent in March 2008 pursuant to mother's request for a ruling from the probate court regarding her party status "as directed by the superior court entry order dated March 11, 2008." About a week later, mother indicated her support for terminating grandfather's guardianship.

¶ 9. In April 2008, grandfather filed a motion to terminate mother's parental rights, which respondent denied. Grandfather appealed the denial to the superior court, which remanded the case back to the probate court on August 20, 2008, for development of the record concerning mother's relinquishment and adoption petition. Although this order was sent to counsel, there is no docket entry at either the superior court or the probate court with respect to the delivery of the remand order to the probate court. By notice dated March 9, 2009, the probate court gave notice to mother of a hearing on grandfather's petition to terminate mother's parental rights and for adoption. The docket entry for the April 8 hearing indicates "ruling for petitioner," and respondent issued a written order dated May 6, 2009, terminating mother's parental rights. Mother did not appeal.

¶ 10. In the meantime, by letter dated January 6, 2009, father's attorney wrote to the probate court to ask why a hearing on father's motion to terminate the guardianship had not been scheduled. By that time, the probate court had stayed proceedings to terminate the guardianship pending the superior court decision on grandfather's appeal in connection with his motion to terminate father's parental rights. In July 2009, at the parties' request, respondent issued a pro forma denial of father's motion to terminate the guardianship so that the guardianship appeal could be consolidated with the pending TPR appeal in the superior court.

¶ 11. The superior court denied grandfather's petition to terminate father's parental rights as well as father's petition to terminate grandfather's guardianship, leaving intact the status quo with respect to the ongoing guardianship and father's parental rights. Both parties appealed to this Court. On appeal, we affirmed the superior court's denial of grandfather's petition to ter-

minate father's parental rights but reversed the denial of father's motion to terminate the guardianship and remanded for the superior court to transfer custody of the child back to father. *In re K.M.M.*, 2011 VT 30, ¶ 26, 189 Vt. 372, 22 A.3d 423. After the appeal, we referred the case to the Judicial Conduct Board for review.

## II.

¶ 12. The Board appointed special counsel Barbara Blackman to investigate the case. Special counsel ultimately filed a formal complaint alleging a violation of Canon 3(B)(8) of the Code of Judicial Conduct, which states that a judge "shall dispose of all judicial matters promptly, efficiently and fairly."[3] A.O. 10 Canon 3(B)(8).

¶ 13. The parties stipulated to the above facts, and in March 2013 the Board held an all-day evidentiary hearing to address matters not resolved by the parties' stipulation. Before the hearing, the parties identified three disputed issues before the Board:

A. Did [respondent] fail to rule in a timely manner on the motion to revoke guardianship filed by the child's parents on January 8, 2002?

B. Did [respondent] cause unnecessary delay in failing to schedule a hearing on the grandfather's motion to terminate the father's parental rights?

C. Did [respondent] fail to respond in a timely manner to the order of remand from the family court dated August 20, 2008?

¶ 14. On March 25, 2013, the Board issued its disposition report. With respect to the 2002 motion to terminate the guardianship, the Board found that, although it could not say with certainty that

---

[3] Special counsel's original complaint also alleged a violation of Canon 3(B)(2), which requires a judge to "be faithful to the law and maintain professional competence in it," based on respondent's alleged failure to schedule a hearing on the guardian grandfather's petition to terminate mother's parental rights. By amended complaint, special counsel later withdrew the alleged violation of Canon 3(B)(2).

respondent had made a ruling from the bench on the motion, special counsel had not met her burden of proof by clear and convincing evidence that respondent had failed to rule on father's motion. The Board acknowledged that a written decision and a clear order would have been preferable, but supported its conclusion by pointing to respondent's testimony that it was his practice in contentious disputes to explain his ruling from the bench at the end of the hearing; his belief that he denied the motion to revoke the guardianship at the conclusion of the hearing for the reasons outlined in his notes; the three-point summary of issues at the end of the six pages of his handwritten notes from the hearing; the fact that the parties continued visits between the child and her parents under grandfather's direction, suggesting that they were behaving as if they understood that the motion had been denied; and the fact that father's 2005 motion did not request that the court resolve the purportedly outstanding 2002 motion but, rather, addressed the changes in father's circumstances since that time. The Board concluded that "a failure to issue a ruling on the first motion to revoke guardianship albeit only orally, has not been shown by clear and convincing evidence."

¶ 15. On the second disputed issue, the Board concluded that there was clear and convincing evidence that respondent's fourteen-month delay in scheduling a hearing on grandfather's motion to terminate father's parental rights was serious enough to violate Canon 3(B)(8). The Board found that the fourteen-month delay made matters worse, was not justified by a plan or any legitimate uncertainty about how to proceed, and was especially troublesome given that respondent realized from the outset that the petition had little chance of success because father had remained consistently involved in the child's life during the guardianship.

¶ 16. Lastly, the Board concluded that special counsel had not established by clear and convincing evidence that respondent failed to dispose of the 2008 remand order from the superior court in a timely manner. The original remand order from the superior court ended up in the probate court file, but was never docketed at the superior court or the probate court. Respondent testified that he had no recollection of seeing the remand order until January 2009, when he got a letter from father's counsel. The Board concluded that the reason for the delay remained unclear, and that respondent himself or staff in the probate or superior courts may have been responsible for the delay. The Board found,

though, that when the delay was brought to respondent's attention, he scheduled a hearing.

¶ 17. The Board's recommended sanction was that the Chair issue a private letter of reprimand to respondent and impose conditions requiring that, for twelve months, respondent engage in a mentoring program with another probate judge and develop plans to ensure prompt scheduling and issuance of written decisions. In explaining its sanction, the Board acknowledged the seriousness of the delay in this case, and noted that the protracted nature of the proceedings distinguished this from a single instance of a greatly delayed ruling. However, the Board also noted that respondent had not been disciplined in connection with prior violations, and that this case was not part of an established pattern of delay. The Board assigned responsibility to respondent for the lack of clear rulings on the issues before him and the endemic court management issues reflected in this case, but also noted that guardianships are frequently in place for many years, and that the actions and decisions of the parties and the underlying circumstances contributed considerably to the delay. Finally, the Board acknowledged respondent's forthrightness in his dealings with the Board, and his good intentions toward all three members of the family.

¶ 18. The Board then issued a letter to respondent on March 25, 2013 stating that he was "hereby privately reprimanded for violating Canon 3(B)(8)."

¶ 19. Respondent did not appeal the Board's order. On April 24, 2013, this Court ordered review on its own motion pursuant to Disciplinary Control Rule 12(3). We requested that the parties address: (1) the Board's finding that special counsel had not met the burden of proof by clear and convincing evidence that respondent failed to rule on father's 2002 motion to terminate the guardianship, and (2) the Board's recommendation of a private reprimand in light of Disciplinary Control Rule 6(7), which makes "rulings of the Board" public after the service of a formal complaint.[4]

---

[4] We do not disturb and respondent did not appeal the Board's conclusion that there was clear and convincing evidence that respondent was responsible for a delay in scheduling a hearing on the petition to terminate father's parental rights serious enough to constitute a separate violation of Canon 3(B)(8).

## III.

¶ 20. Canon 3(B)(8) of the Judicial Code of Conduct states that a judge "shall dispose of all judicial matters promptly, efficiently and fairly." The evidentiary issue on review is whether the Board's determination that special counsel had not proven by clear and convincing evidence that respondent had failed to rule on father's motion was clearly erroneous. Our analysis of this question is shaped by three considerations: the burden of proof, the standard of review, and this Court's delineation of the issues presented on review. With respect to the first of these considerations, we emphasize that special counsel not only bore the burden of proving respondent's violation of the applicable canon, but was required to meet that burden by clear and convincing evidence. R.S.C.D.C.J. 10(1) ("Any finding of a violation shall be based upon clear and convincing evidence.").

¶ 21. ■ ■ With respect to the second, we will uphold the Board's factual findings unless clearly erroneous.[5] R.S.C.D.C.J. 12(5). Accordingly, we will defer to the Board's factual findings "if they are supported by the evidence as seen in the light most favorable to the prevailing party." *Towslee v. Callanan*, 2011 VT 106, ¶ 5, 190 Vt. 622, 55 A.3d 240 (mem.). To the extent that this appeal raises issues implicating the Board's conclusions and exercise of discretion, we are less deferential. The Board's conclusions and recommendations are advisory only; the final and ultimate decision in judicial disciplinary matters rests with this Court. *Boardman*, 2009 VT 42, ¶ 12; see also *In re Hill*, 152 Vt. 548, 555, 568 A.2d 361, 365 (1989) (per curiam) ("[T]his Court is the true final arbiter in this matter. It is not the function of this Court, in matters of this kind, to 'review' actions taken below. The only final and ultimate decision is made here, on the responsibility of this Court." (quotation omitted)). However, the Board's conclusions, even if advisory, are nonetheless entitled to "great weight." *Boardman*, 2009 VT 42, ¶ 12.

[5] We have previously suggested that the Board's findings are "strictly advisory," but have generally upheld those findings when supported by the record. See *In re Boardman*, 2009 VT 42, ¶ 12, 186 Vt. 176, 979 A.2d 1010 (explaining that the Board's findings and conclusions "carry great weight" but are "solely advisory in nature" (quotation omitted)). That the clearly erroneous standard applies to the Board's factual findings, as opposed to its legal conclusions or exercises of discretion, is clearly delineated in the rules governing disciplinary control of judges. R.S.C.D.C.J. 12(5).

¶ 22. Finally, the issue we asked the parties to brief was whether the Board erred in concluding that special counsel had failed to show that respondent "failed to rule on [father's] November 2002 motion to revoke the guardianship." As discussed more fully below, respondent's failure to reduce the court's ruling to writing and to record the judgment, or to ensure that it was recorded, raises concerns of its own. However, those concerns are not the subject of this appeal, except insofar as respondent's failure is one component in the constellation of evidence presented below concerning the question of whether respondent ruled on father's 2002 motion to terminate the guardianship.

¶ 23. ▮ Given these considerations, we conclude that the Board's finding as to respondent's ruling on the 2002 motion to terminate the guardianship was not clearly erroneous. First and foremost, the Board's conclusion was predicated on respondent's own testimony, both as to his general practice of explaining his rulings from the bench, and as to his belief that in this case he did just that at the February 2002 hearing. Moreover, although the three-point summary at the end of respondent's handwritten notes of the February 2002 hearing could cut both ways, the Board concluded in the context of this case that the notes provided support for respondent's recollection that he denied the motion at the end of the hearing.

¶ 24. The Board further considered the evidence of the parties' conduct after the February 2002 hearing, and concluded that the parties behaved as if they understood that the motion to terminate the guardianship had been denied — the child remained with her grandfather and visits between the child and her parents continued, the administration of the guardianship continued, and father did not return to court in connection with his request to terminate the guardianship until several years later, after his life had changed and improved somewhat. Finally, the Board stopped short of concluding that respondent *did* rule from the bench on father's motion in 2002. Although it concluded that "[t]he stronger evidence is that the parties left the January 2002 hearing knowing that the guardianship would remain in place because at that time, the parents were unsuitable," the Board rested its ultimate conclusion on special counsel's failure to prove otherwise by clear and convincing evidence. For these reasons, we accept the Board's conclusion that special counsel failed to prove that respondent did not rule on father's 2002 motion "promptly, efficiently and fairly."

¶ 25. Special counsel points to contrary evidence introduced below in support of the argument that she met the burden of proving by clear and convincing evidence that respondent did not rule from the bench on the 2002 motion. Special counsel points first to father's testimony before the Board that he never understood there to have been any resolution of his motions to terminate the guardianship. He testified that "it never got settled one way or another" and that he never "got an answer in stone" that respondent was not going to terminate the guardianship. Special counsel further argues that grandfather's filings after the 2002 hearing, including a post-hearing motion in opposition to the termination and a 2006 complaint indicating that neither of father's motions had been ruled on, demonstrate that even grandfather, who had no reason to bring any attention to the allegedly unresolved motion, did not understand respondent to have made a conclusive ruling from the bench. Lastly, special counsel emphasizes that Attorney Zarina O'Hagin, who became the court-appointed guardian ad litem in 2004, testified to the Board that when she became involved with the case she understood that respondent had yet to rule on a motion to terminate the guardianship.

¶ 26. ▮ The Board could have chosen to credit this countervailing testimony, and to give it greater weight, but did not. Under the clearly erroneous standard, the findings of the Board "must stand if supported by credible evidence, even though there may be inconsistencies or substantial evidence to the contrary." *Gilbert v. Davis*, 144 Vt. 459, 461, 479 A.2d 159, 160 (1984). In light of this standard, and special counsel's burden of proof, we do not disturb the Board's finding.

¶ 27. Although we affirm the Board's conclusion with respect to respondent's violation of the applicable canon, we emphasize that our affirmation in no way suggests that the manner in which the successive motions in this case were processed by the court — including by respondent himself and possibly court administrative personnel — met the standard expected in a Vermont court. Even assuming that respondent did issue an oral ruling from the bench at the 2002 hearing, it is undisputed that this ruling was never reduced to writing in any way, shape, or form — not in a docket entry, not in a written judgment, not in a written order reflecting

the court's findings and conclusions, and not in a reliable transcript.[6]

¶ 28. ■ Although probate proceedings are generally informal, as we noted in *Rutherford v. Best*, when a probate proceeding becomes a vehicle for separating parent and child, much of that informality can be lost. 139 Vt. 56, 63, 421 A.2d 1303, 1307 (1980). In *Rutherford*, we concluded that fundamental fairness requires probate judges to make findings and prepare an adequate record for appeal in contested custody proceedings. *Id.*; see also Reporter's Notes, V.R.P.P. 52 (noting that our holding in *Rutherford* requires findings in some cases in order to comport with due process). Generally, a lack of findings and conclusions on the record is not a basis for a finding of judicial misconduct, but it may support an appeal or motion for reconsideration. See *In re Memorandum of Decision of Jud. Conf. Comm. on Jud. Conduct & Disability*, 517 F.3d 558, 561-62 (U.S. Jud. Conf. 2008) (concluding that failure to give reasons for particular decision, like the reasons themselves, should not be subject of misconduct proceeding).

¶ 29. ■ Wholly apart from the absence of findings in this case is the absence of any record of the judgment itself. This was not merely a ruling on a motion; it was a dispositive and appealable ruling. See *Boisvert v. Harrington*, 173 Vt. 285, 287, 796 A.2d 1102, 1105 (2002) (recognizing that but for trial court's remand making interlocutory appeal the proper recourse, denial of request to revoke guardianship is proper basis for jurisdiction on appeal); see also *In re Guardianship of Stevens*, 2014 ME 25, ¶ 1, 86 A.3d 1197 (deciding appeal of judgment entered denying petition to terminate guardianship of minor child). Probate Rule 58 requires that a judge approve and sign a judgment and that the register thereupon enter it. A judgment is effective only when entered appropriately into the docket as provided in Probate Rule 79. *Id.* The probate court register is tasked with entering the judgment on the docket, but it is the judge who sets the ball in motion by

---

[6] The probate rules require recording of hearings involving the contested guardianship of a minor, V.R.P.P. 47(a)(1); we recognize that in this case respondent attempted to record the proceedings, but due to technical deficiencies, the recording is woefully incomplete. This technical mishap is not itself a cause for discipline, but does exacerbate the problems arising from the court's failure to document its decision.

approving and signing the judgment. See Reporter's Notes, V.R.P.P. 58 ("[T]he responsibility for signing judgments is always upon the judge.").

¶ 30. ■ The 2006 Reporter's Notes to Vermont Rule of Civil Procedure 58, from which Probate Rule 58 was adapted, explain that the rule makes clear that a judgment is effective when entered on the docket, which first requires the judge's approval and signature. The civil rule analog to Probate Rule 58 "specifically requires action after the court renders a decision in order to reduce that decision to a judgment." *Powers v. Hayes*, 170 Vt. 639, 640, 751 A.2d 781, 782 (2000) (mem.) (concluding appeal period does not begin until the court enters judgment, which requires more than mere entry on the docket); see also *Burton v. Jeremiah Beach Parker Restoration & Constr. Mgmt. Corp.*, 2010 VT 55, ¶ 14, 188 Vt. 583, 6 A.3d 38 (mem.) (holding that findings and conclusion entered on docket along with note regarding disposition did not constitute a judgment but only became judgment when entered in accordance with V.R.C.P. 58). The importance of entering a judgment under Probate Rule 58 is not merely clerical; entry of the judgment is critical because it begins the running of time limits for appeal and post-judgment motions. Reporter's Notes, V.R.P.P. 58. Moreover, in this case the impact of the court's failure to enter a judgment that would then be reflected in the docket entries was exacerbated by its decision not to issue any written order at all.

## IV.

¶ 31. The second issue with respect to which we requested briefing is the availability of a "private reprimand" as a sanction for a violation under these circumstances.

¶ 32. The Board's process for addressing complaints concerning a judge's conduct has multiple stages. First, upon receiving a complaint or otherwise learning of a potential violation, the Board conducts an initial inquiry — a review of written records, including a written response from the judge in question. R.S.C.D.C.J. 7(1). Following this initial inquiry, the Board may dismiss the complaint, pursue a deferred discipline agreement, issue a written warning, or order a preliminary investigation. *Id.* A nonpublic written warning is appropriate when the Board concludes that the conduct is potentially a violation of the Code of Judicial Conduct

but a formal complaint is not warranted. *Id.* 8(2). A deferred discipline agreement can only be entered with the agreement of a respondent judge, and may impose terms and conditions as an alternative to discipline — such as education, counseling, substance abuse treatment, monitoring or review by a suitable person, or limitations on the performance of judicial duties. *Id.* 8(3). Both a nonpublic written warning and a deferred discipline agreement are confidential; although the Board reports the existence and resolution of a complaint using nonidentifying information, it does not disclose to the public the identity of the judge involved or the specifics of the sanction. *Id.* 6(7), 8(3), 11.

¶ 33. If the Board pursues an investigation, upon a finding of probable cause the Board may, in its discretion, proceed to the formal complaint process. Alternatively, it may pursue a deferred discipline agreement, issue a written warning, dismiss the complaint, or pursue any other action authorized by the rules. *Id.* 7(3). Again, prior to a formal complaint, these proceedings are confidential. *Id.* 6(7).

¶ 34. A formal complaint by the Board may lead to discovery, a formal hearing, and a disposition report by the Board. *Id.* 9, 10. The rules provide that after the service of a formal complaint upon a judge, "all subsequent pleadings, exhibits and rulings of the Board, and any hearing related to the Formal Complaint, shall be public." *Id.* 6(7).

¶ 35. Against this backdrop, we consider whether a private reprimand is available to the Board as a sanction following a formal complaint and hearing. Under Disciplinary Control Rule 6(2), the Board may recommend the following sanctions against a judge: "written warning, public reprimand, limitations or conditions on the performance of judicial duties, suspension for a portion or all of the remainder of the judge's term in office, or other appropriate sanctions." The question is whether the catchall for "other appropriate sanctions" includes a private reprimand.

¶ 36. The failure of the rules to specifically list "private reprimand" as an available remedy is not insignificant. The sanction of private reprimand is well-established in the related context of attorney discipline.[7] Given that the disciplinary rules expressly

---

[7] The rules governing Vermont's Professional Responsibility Board explicitly provide for admonitions of attorneys. A.O. 9 Rule 8(A)(5); see *In re PRB Docket No. 2007-046*, 2009 VT 115, ¶ 22 n.4, 187 Vt. 35, 989 A.2d 523 (stating terms

identify a *public* reprimand as an available sanction, it would be incongruous for them to fail to list a *private* reprimand as another possibility if a private reprimand were contemplated as a disposition following formal complaint.

¶ 37. Moreover, the rules expressly contemplate confidential sanctions — a nonpublic warning and deferred discipline agreement — as *alternatives* to the formal complaint process. R.S.C.D.C.J. 6(7). Once a formal complaint is filed, the rules provide that "all subsequent pleadings, exhibits and rulings of the Board, and any hearing relating to the Formal Complaint, shall be public." *Id.* The Board's disposition report is necessarily public, further undermining the suggestion that the sanction articulated in that report could be private.[8]

¶ 38. Respondent acknowledges that the Board's decision and its private letter of reprimand are both matters of public record. He argues that the use of the label "private" does not actually mean the letter is not a public document but, instead, is intended to indicate that the Board does not regard the violation to be one that should require a public sanction, even though under the rules the sanction is, in fact, public. Whatever the Board's intentions, we cannot square the label "private reprimand" with the fact that the order and letter, including information identifying respondent, are public documents.

¶ 39. ▪ ▪ The primary purpose of judicial discipline is to "protect the public, ensure the evenhanded administration of justice, and preserve and enhance public confidence in the integrity and fairness of the justice system." *In re O'Dea*, 159 Vt. 590, 604, 622 A.2d 507, 515 (1993). The use of a label for a sanction that is at odds with the underlying legal reality is not likely to enhance public confidence in the justice system. To the extent that the Board has purported to issue a "private reprimand" to respondent, we conclude that it cannot do so.

---

"admonition" and "private reprimand" are synonymous). Private admonitions can only be used when there is little to no injury to the client, public, legal system or profession and there is little likelihood of repetition by the attorney. A.O. 9 Rule 8(A)(5)(b).

[8] We take judicial notice of the fact that the Board's disposition report, including its recommendation of a private letter of reprimand and its list of conditions, are duly posted on the Board's web page. Judicial Conduct Board, Disposition Report (Mar. 25, 2013), https://www.vermontjudiciary.org/lc/Shared%20Documents/Disposition%20Report%2011.020.pdf.

¶ 40. ■■ ■■ This Court has broad power in fashioning appropriate sanctions, which must be tailored to the individual. *Id.* at 606, 622 A.2d at 517 (citing Vt. Const. ch. II, §§ 30, 36). The Board's sanction order recognizes respondent's responsibility for undue delay and endemic court management issues, but also acknowledges that the choices and actions of others played a significant role in the overall duration of the underlying case.[9] It takes into account respondent's forthrightness in his dealings with the Board, his good intentions toward the parties, the reasonableness of his rulings in the underlying case, and his willingness to accept conditions intended to prevent this type of problem from recurring. The conditions crafted by the Board include thoughtful provisions to provide mentorship and guidance to respondent as well as to establish clear expectations and requirements concerning administrative reforms in his court. They are tailored to avoid a recurrence of the failures that occurred in this case, with a particular focus on the prompt scheduling of hearings and issuance of written decisions in contested custody cases.

¶ 41. We see no reason to set aside these recommended conditions. We do, however, conclude that characterization of respondent's reprimand as "private," rather than "public," despite the conceded public character of the reprimand, is confusing and cannot stand. Accordingly, we exercise our authority to amend respondent's sanction to characterize it as a "public reprimand." In all other respects, we affirm the Board's sanction for respondent's violation of Canon 3(B)(8).

*The Board's sanction is amended to "public reprimand"; in all other respects the Board's sanction for respondent's violation of Canon 3(B)(8) is affirmed.*

.

.

---

[9] Although a single instance of delay in rendering a decision does not ordinarily violate Canon 3(B)(8) unless there is a pattern of unreasonable delay, *In re Kilburn*, 157 Vt. 456, 459, 599 A.2d 1377, 1379 (1991) (per curiam), the Board concluded that the delay in this case, while falling short of an established pattern of delay, is more serious than a single instance. Respondent has not appealed this conclusion.