MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 104
Docket:       Oxf-13-497
Submitted
 On Briefs:   July 1, 2014
Decided:      August 12, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

# GUARDIANSHIP OF GABRIEL I.K. JOHNSON

GORMAN, J.

[¶1] Krystal M. Johnson, the mother of Gabriel I.K. Johnson, appeals from a judgment of the Oxford County Probate Court (*Hanley, J.*) awarding guardianship of the child to the child's paternal grandparents, Richard F. Mitchell Jr. and Joan M. Mitchell, with the consent of the child's father, Dana A. Mitchell. The mother contends that the court erred in refusing to allow her to record the hearing, and that the court's judgment is not supported by sufficient findings or evidence. We affirm the judgment.

## I. BACKGROUND

[¶2] The grandparents petitioned the Androscoggin County Probate Court for full guardianship of the child on August 29, 2012. Two days later, they filed a separate petition asking to be named as the child's temporary guardians. At the time, the mother and father had shared parental rights to the child and the mother

2

provided his primary residence pursuant to a judgment entered in the District Court (Lewiston, *Lawrence, J.*) on August 24, 2011.

[¶3]    On September 11, 2012, the court conducted a hearing on the grandparents' August 31, 2012, petition for temporary guardianship.  The Probate Court (*Klein-Golden, J.*) entered an order appointing the grandparents as temporary coguardians of the child until December 18, 2012, and establishing a contact schedule between the mother and her child.  The order does not indicate that it was based on the parties' consent, but it contains neither an indication that any evidence was presented, nor any findings pursuant to 18-A M.R.S. § 5-204 (2013).[1]  Neither parent appealed that order, but, apparently in response to letters

---

[1]  Title 18-A M.R.S. § 5-204 (2013) provides, in pertinent part:

> The court may appoint a guardian or coguardians for an unmarried minor if:
>
> **(a)** All parental rights of custody have been terminated or suspended by circumstance or prior court order;
>
> **(b)** Each living parent whose parental rights and responsibilities have not been terminated or the person who is the legal custodian of the unmarried minor consents to the guardianship and the court finds that the consent creates a condition that is in the best interest of the child;
>
> **(c)** The person or persons whose consent is required under subsection (b) do not consent, but the court finds by clear and convincing evidence that the person or persons have failed to respond to proper notice or a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child; or
>
> **(d)** The person or persons whose consent is required under subsection (b) do not consent, but the court finds by a preponderance of the evidence that there is a de facto guardian and a demonstrated lack of consistent participation by the nonconsenting parent

from the guardians and the mother, the court scheduled another hearing for October 23, 2012. After the second hearing, the court issued an order establishing a new contact schedule between the mother and her child. Neither of these hearings was recorded.

[¶4] On December 19, 2012, the day after the expiration of the temporary guardianship order, the parties appeared for a hearing in the Oxford County Probate Court[2] pursuant to a notice that identified the operative petition as the August 29, 2012, "Petition for Appointment of Guardian of Minor." After this hearing, the court (*Hanley, J.*) issued an order, with the parents' consent, that—despite purporting to be a ruling on the petition for full guardianship—again appointed the grandparents as *temporary* coguardians for a period to expire on March 12, 2013.

[¶5] In January of 2013, while that second temporary order was in place, the father filed a motion in the District Court asking that it modify the 2011 parental rights judgment. In his motion, the father notified the District Court that the child was living with the child's grandparents pursuant to a temporary guardianship, and

---

or legal custodian of the unmarried minor. The court may appoint the de facto guardian as guardian if the appointment is in the best interest of the child.

[2] Although the matter was commenced in the Androscoggin County Probate Court and the orders dated September 11, 2012, and October 23, 2012, were issued by that court, the case was transferred to the Oxford County Probate Court in November of 2012 due to the recusal of the newly elected Androscoggin County probate judge. *See* 18-A M.R.S. § 1-303(c) (2013).

asked that the parental rights order in place be modified to permit him to pay child support to the guardians rather than to the child's mother. On March 22, 2013, before his initial motion was heard, the father filed an amended motion to modify, again referencing the guardianship, and requesting, among other things, that he be awarded primary residence of the child.

[¶6] At the same time that the parents were actively litigating parental rights in the District Court, the guardianship proceedings were continuing in the Probate Court. On March 13, 2013, the day after the second temporary guardianship order expired, the Probate Court held another hearing, ostensibly to again address the grandparents' August 29, 2012, petition for full guardianship. On March 27, 2013, again by agreement of the parties, the court issued a third *temporary* guardianship order for a period to expire on August 2, 2013. This order, entitled "LIMITED GUARDIANSHIP ORDER," provided for a transitional period that would result in the return of the child to his mother's care and custody.

[¶7] Within two weeks, the grandparents filed a letter with the Probate Court asking that the March 27, 2013, order be "reviewed." The child's maternal grandmother, Karla Bailey, then filed her own petition seeking guardianship of the child.

[¶8] The court issued a notice of hearing, purportedly to deal with the original petition for guardianship, and, on May 17, 2013, after a contested but

unrecorded hearing, the court modified the temporary limited guardianship order by requiring the guardians and the parents to "comply with any and all [Department of Health and Human Services] directives or requirements," even if those directives resulted in different terms of contact than those contained in the March 27, 2013, order. The May 17, 2013, order did not address the maternal grandmother's petition.

[¶9] One month later, on June 18, 2013, the mother petitioned for the removal of the guardians. *See* 18-A M.R.S. § 5-212 (2013). The next day, the father petitioned for termination of the guardianship "pending [the] custody case [in the] district court."

[¶10] On July 17 and 31, 2013, the court conducted a hearing pursuant to a notice that listed all five outstanding petitions.[3] In the order it issued after this hearing, however, the court addressed only one of the petitions, i.e., the paternal grandparents' August 29, 2012, petition for full guardianship.[4] Although this

---

[3] Listed in the notice were both of the grandparents' original petitions for full and temporary guardianships, the maternal grandmother's petition for guardianship, the mother's petition for removal of the guardians, and the father's petition for termination of the grandparents' guardianship.

[4] Although the court did not specifically deny the maternal grandmother's petition for guardianship, the father's petition to terminate the guardianship, or the mother's petition to remove the guardians, the effect of the order was to deny each petition.

6

hearing was testimonial and contested,[5] the court did not record the hearing and denied the mother's request that she be permitted to record the hearing at her own expense.

[¶11]  By order dated August 21, 2013—nineteen days after the expiration of the third temporary guardianship order—the court found that the child was not safe with the mother, that the mother was an unfit parent and thereby presented a temporarily intolerable living situation for the child, and that appointing the paternal grandparents as the child's guardians was in the child's best interest. Because the father consented to the guardianship, the court did not make any findings as to his fitness.  *See* 18-A M.R.S. § 5-204(b).  The court appointed the grandparents as "FULL guardians" of the child effective July 31, 2013, but also noted that it would review the case after the disposition of the parental rights action in the District Court.  Only the mother appealed.  *See* 18-A M.R.S. § 1-308 (2013).

[¶12]  Because there was no recording, the mother submitted to the Probate Court a proposed statement of the evidence from the guardianship hearing pursuant to M.R. App. P. 5(d).  After the mother filed an amended statement of the evidence, to which the grandparents had an opportunity to, but did not, respond,

---

[5]  The father testified during the hearing that he consented to the guardianship, notwithstanding his pending motion to terminate the guardianship and his motion to amend the parental rights order in the District Court to give him primary residence of the child.

the court issued an order dated December 18, 2013, containing the final statement of the evidence pursuant to M.R. App. P. 5(d)-(e).

[¶13] On September 27, 2013, more than a month *after* the Probate Court had entered its full guardianship judgment, and while the record on appeal from that order was being processed, the District Court (*Woodman, M.*) entered an order—based on the parents' stipulations—that awarded primary residence of the child to the father and awarded the mother supervised, and later, unsupervised, visits with the child. The order makes no mention of the guardianship.

## II. DISCUSSION

[¶14] The mother challenges the Probate Court's denial of her request to record the final hearing at her own expense, as well as the sufficiency of the findings and the evidence supporting the guardianship judgment. Before we reach these issues, however, we address the procedures undertaken by both the Probate Court and the District Court as to these parties.

[¶15] The grandparents' guardianship petitions had already been pending in the Probate Court for nearly five months when District Court proceedings were initiated to amend the existing parental rights judgment. Despite the entry of a final guardianship judgment in August of 2013 that effectively stripped the parents of their parental rights, the District Court, by agreement of the child's parents, issued an amended parental rights judgment just one month later that placed

8

primary residence of the child with the father and provided the mother contact with the child. These two proceedings concerning the living situation and primary caretakers of the same child were simultaneously pending in different courts for approximately eight months, but we find no indication in either record that the courts or the parties made any attempt to have the courts collaborate so that the cases could be considered in a coordinated fashion. The end result is that, within a few weeks, two separate judgments were issued in two different courts placing responsibility for the child, and granting rights concerning him, with different people.

[¶16] The District Court judgment was not appealed, and thus that decision is not before us to reconcile with the Probate Court judgment. Nevertheless, we set out this basic procedural history to highlight that when two courts are deciding the same or related issues concerning a family—particularly issues regarding the care of a child—collaboration between the two courts must occur if the proceedings are to be effective.

[¶17] Such collaboration is not prohibited by any applicable rule of ethics. Maine Code of Judicial Conduct Canon I(3)(B)(7) allows judges to engage in communications about a pending matter outside the parties' presence in five instances:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows a reasonable opportunity to respond.

(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the identity of the person consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond.

(c) A judge may consult with court personnel, or persons appointed by the court, whose function is to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges.

(d) A judge may, with the consent of the parties, confer separately with the parties with or without their lawyers present, or separately with their lawyers alone, in an effort to mediate or settle matters pending before the judge.

(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.

Pursuant to subsection 7(c), a judge is expressly permitted to discuss pending matters with other judges.  M. Code Jud. Conduct I(3)(B)(7)(c).  Additionally, pursuant to subsection 7(a), a judge may discuss matters with another judge for the purpose of, for example, creating consistent procedures, if the judges reasonably

believe that no party will gain any advantage by such discussions and the judges

disclose those communications to the parties and provides the parties with an

opportunity to comment on the communications. M. Code Jud. Conduct

I(3)(B)(7)(a). This is precisely what should have happened here.[6]

[¶18] As to the mother's contentions regarding the court's denial of her

request to record the final hearing at her own expense, we discern no constitutional

or statutory provision, nor any applicable rule of court or administrative order, that

the court violated in precluding Johnson from recording the hearing at her own

expense in these circumstances.[7] Nevertheless, it is preferable in every instance for

---

[6] We also note the Probate Court's treatment of temporary guardianships. During the full year of proceedings in the Probate Court, the court granted the grandparents a series of temporary guardianships providing interim relief in a manner akin to the issuance of a temporary protection order before a final protection hearing, *see* 19-A M.R.S. § 4006(2) (2013); some of these temporary guardianship orders were based on the parties' agreement, but others contain no indication of the parents' consent. The docket indicates that hearings were conducted, but the record is largely silent as to what occurred during those hearings, and none of them was recorded.

Although the parties have not challenged the prior temporary guardianships or the court's plan to review what is otherwise a final guardianship judgment in the wake of the District Court's disposition of the parental rights matter, we note that the Probate Code does not support the Probate Court's interpretation of the statute as permitting serial temporary guardianships as stop-gap measures while the petition for permanent guardianship is proceeding. Pursuant to 18-A M.R.S. § 5-207(c) (2013), the court may award a temporary guardianship for a period of six months or less, *but only upon the same proof as that required for a permanent guardianship* pursuant to 18-A M.R.S. § 5-204 (2013), that is, after the parents' rights have been terminated or suspended, with the parents' consent, upon proof of a temporarily intolerable living situation, or upon proof of a de facto guardianship. The award of a temporary guardianship, despite its limited time frame, *is* a final judgment. *See Murphy v. Maddaus*, 2002 ME 24, ¶ 13, 789 A.2d 1281 (stating that a final judgment is one that "fully decides and disposes of the whole cause leaving no further questions for future consideration and judgment by the Court" (quotation marks omitted)).

[7] Maine Rule of Civil Procedure 76H(a) requires both that a proceeding shall be recorded at the request of a party and that a party may record the proceedings at her own expense, but Rule 76H applies only to proceedings in the District and Superior Courts, and there is no corresponding rule in the Maine

a trial court to allow a party to record a hearing if the court is unwilling or unable to do so.

[¶19] Finally, we are not persuaded by the mother's additional contentions that the court's findings were insufficient and based on insufficient evidence. The statute provides that the court may appoint a guardian for a minor over the objection of a parent if the court finds

> by clear and convincing evidence that the [parent or parents] have failed to respond to proper notice or a living situation has been created that is at least temporarily intolerable for the child even though the

---

Rules of Probate Procedure. Rule 76H is also silent as to what, if any, procedure a party must follow to record a hearing. Similarly, Administrative Order JB-05-15 places approval to record a proceeding in the presiding justice's "sole discretion," but it applies only to the Supreme Judicial Court, Superior Court, and District Court. Cameras and Audio Recording in the Courts, Me. Admin. Order JB-05-15 (as amended by A. 9-11) (effective Sept. 19, 2011).

Maine Rule of Probate Procedure 77(b) adopts the provisions of M.R. Civ. P. 77(b)(2), which provides that "24 hours['] advance notice is required for recording of any civil proceeding" and that "[e]xcept by special order of the court, no record will be made in any court of civil nontestimonial matters." Likewise, Administrative Order JB-05-13 states that "[i]n all proceedings not required by statute or rule to be recorded, an electronic recording may be had only on a minimum of 24-hour notice to the clerk," a requirement that the court found was not satisfied in this matter. Notice Periods for Electronic Recording, Me. Admin. Order JB-05-13 (effective Aug. 1, 2005).

Administrative Order JB-12-1 requires that all proceedings of certain case types—among them, "[t]estimonial [p]roceedings involving the appointment of a [g]uardian for a [m]inor"—must be "recorded and monitored by a court clerk or other court personnel," and that even if a given proceeding is not among those that are routinely recorded, it "shall be recorded at the request of any party or at the request of the presiding justice or judge." Recording of Trial Court Proceedings, Me. Admin Order JB-12-1 (as amended by A. 11-13) (effective Nov. 22, 2013). We have not yet applied JB-12-1 to probate proceedings, however, and in any event, it is silent as to a party's attempt to record her own hearing.

Finally, given the remedy set forth in M.R. App. P. 5(d)-(e), of which the mother availed herself in this case, we discern no violation of her right to procedural due process based on her inability to record the hearing herself. *See In re Dustin C.*, 2008 ME 89, ¶¶ 3, 5-7, 952 A.2d 993 (holding that the unavailability of appellate review of an order appointing a permanency guardian does not violate due process given the existence of additional procedural safeguards affording notice and an opportunity to be heard, as well as the right to petition to terminate the guardianship, and stating that there is no constitutional right to appeal in any event); *In re Amberley D.*, 2001 ME 87, ¶ 11, 775 A.2d 1158.

> living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

18-A M.R.S. § 5-204(c). Given that the fundamental right to parent is at stake, we have interpreted the "temporarily intolerable living situation" requirement of section 5-204(c) to require proof that the nonconsenting parent is unfit to parent, that is, that the parent is "currently unable to meet the child's needs and that inability will have an effect on the child's well-being that may be dramatic, and even traumatic, if the child lives with the parent." *Guardianship of Jewel M.* (*Jewel I*), 2010 ME 17, ¶¶ 12-13, 989 A.2d 726; *see Guardianship of Jewel M.* (*Jewel II*), 2010 ME 80, ¶ 11, 2 A.3d 301. We review the court's findings of fact for clear error, and we will uphold those findings if there is any competent evidence in the record to support them. *Jewel I*, 2010 ME 17, ¶¶ 10, 14, 989 A.2d 726.

[¶20] The court found that the grandparents met their burden of proving by clear and convincing evidence that the mother was an unfit parent and thereby presented a temporarily intolerable living situation for the child, and that it was in his best interest to grant the guardianship. These findings were supported by evidence of the mother's mental health issues, for which she has refused to take medication or seek adequate mental health treatment; her relationship with an abusive man; her inability to care for herself or her other children; her failure to

follow through on opportunities to help herself and interact with the child; the child's fear of the mother; and the child's disclosure of abuse by her. In addition, there was evidence of the child's own mental health symptoms, the likelihood that the child would be traumatized by living with the mother, the child's improved mental stability and performance in school since residing with the grandparents, and the child's desire to stay with the grandparents.

[¶21] The court's explicit findings were also sufficient to support its judgment. Title 18-A M.R.S. § 5-207(b) (2013) details what the court is required to find to appoint a guardian: "that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 5-204 have been met, and the welfare and best interests of the minor will be served by the requested appointment." Here, there was no dispute as to venue or notice, and the court found all of the elements necessary to support a guardianship judgment pursuant to sections 5-204 and 5-207. Although the court's findings were not lengthy or detailed, they did explain the basis of its decision according to these statutory requirements.[8]

---

[8] The court also did not exceed its discretion in denying the mother's motion for an enlargement of time to seek additional findings and conclusions. *See Gregory v. City of Calais*, 2001 ME 82, ¶ 9, 771 A.2d 383.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jacqueline R. Moss, Student Attorney, and Deirdre M. Smith, Esq., Cumberland Legal Aid Clinic, Portland, for appellant Krystal M. Johnson

Richard & Joan Mitchell did not file a brief

Oxford County Probate Court docket number 2012-348
FOR CLERK REFERENCE ONLY