MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 80
Docket:       Cum-15-461
Argued:       February 11, 2016
Decided:      May 26, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

GUARDIANSHIP OF HAILEY M.

SAUFLEY, C.J.

[¶1]  The mother of sixteen-year-old Hailey M.[1] appeals from a judgment entered by the Cumberland County Probate Court (*Mazziotti, J.*) granting Hailey's paternal grandparents' petition for guardianship.  The mother challenges the court's findings and argues that the award of full guardianship—rather than a limited guardianship—to the paternal grandparents, with no arrangement for transition back into the mother's home, unreasonably infringed on her fundamental right to parent her daughter in violation of her substantive due process rights.  We affirm the judgment.

I.  BACKGROUND

[¶2]  In September 2014, Hailey's mother petitioned the Cumberland County Probate Court for Hailey's paternal grandparents to be appointed as guardians so that Hailey could attend school in Freeport, where the grandparents live.  The

---

[1]  On motion of one of the parties, the Court has allowed the use of this confidential naming protocol. *Cf.* 18-A M.R.S. §§ 5-101 to 5-213 (2015).

2

mother withdrew the petition in November 2014 because the petition had been sought "for an educational purpose that [was] no longer needed." The court dismissed the petition.

[¶3] On December 12, 2014, the grandparents petitioned to have themselves appointed as the guardians of the child on the grounds that the child needed a safe and supportive environment, and had threatened to run away from her mother's house if she could not stay at her grandparents' house. The child began to live with her grandparents in January 2015. The child's father consented to the guardianship, but her mother did not.

[¶4] A trial was held on July 9, 2015, at which the court heard testimony from the child, who was then fifteen years old; her parents; her grandmother; and a clinician who had provided home and community treatment services to the child and her mother. The parties also stipulated that the grandfather agreed with the grandmother that the two of them should become guardians for the child.

[¶5] The court entered a judgment finding, by clear and convincing evidence, that the mother had created a living situation that was at least temporarily intolerable for the child and that a guardianship with the paternal grandparents was in the child's best interest. It found that the mother had shown an inability to meet the child's needs that threatened the child's well-being and could result in trauma to the child if she remained with the mother. The court also

found that the grandparents were qualified and able to care for the child, and that the appointment was necessary and in the best interest of the child, who agreed with the creation of a guardianship. The court ordered that contact between the mother and the child not be obstructed or restricted if the child desires contact, and that the grandparents "encourage and facilitate a healthy relationship between mother and daughter."

[¶6] The mother moved for additional findings of fact and for a conclusion that the grandparents had failed to prove the mother's unfitness by clear and convincing evidence. In that motion, the mother also asked the court to indicate whether it had considered ordering a limited guardianship or a reunification plan with the mother.

[¶7] The court entered findings of fact and conclusions of law on August 27, 2015. The court ultimately found that a full guardianship in the grandparents was warranted. In its order, the court did not make extensive findings of fact but instead primarily summarized the witnesses' testimony.[2] Apart from noting an inconsistency in the mother's testimony about how many times the child had run away, the court did not indicate which testimony it found credible. We

---

[2] Because a record of the testimony must be kept in proceedings pertaining to the guardianship of a minor, *see* M.R. Prob. P. 76H; M.R. Civ. P. 76H; Recording of Trial Court Proceedings, Me. Admin. Order JB-12-1 § II (as amended by A. 11-14) (effective Nov. 24, 2014), it is not necessary for the court to recite or summarize the testimony in its judgment. The best, and most efficient, practice is for the court to expressly state the facts that it found to be true.

4

therefore focus on the following findings that the court *did* make in support of its conclusion that the mother had created an at least temporarily intolerable living situation.

[¶8]  The court explicitly found that the mother had created an abusive environment in which the child was hurting herself and running away, and that the mother was unable to meet the child's mental health needs.  The court further found that the mother's conduct toward the child had caused, or at least exacerbated, the child's unsafe behaviors, resulting in a home environment that was unfit and not suited to meeting the child's needs.

[¶9]  Supporting these findings, the record includes evidence of the following facts.  When the child lived with her mother, the mother took out her aggressions on the child and would swear, scream, and yell at her.  The child inflicted harm on herself, as evidenced by slash marks on her arms and calls the father received from the school nurse.  The child threatened to hurt herself if she had to stay with the mother, and she underperformed at school in hope that she would be allowed to leave the mother's home.  The child has given up on her relationship with her mother after repeated attempts to repair it with the help of counselors.  The child's interactions with her mother exacerbated the child's symptoms of anxiety, depression, and isolation.  If she were forced to live with the mother, the child would run away again.

[¶10]  The child, her clinician, her father, and her grandmother all agreed that the child is doing much better since leaving the mother's home.  She is not hurting herself, is happy, is no longer depressed and hiding in her room, no longer takes anti-depressant medication, and is putting effort into school and extracurricular activities.

[¶11]  In entering its judgment after the mother's motion for findings of fact and conclusions of law, the court did not alter its appointment of the grandparents as full guardians.  Nor did it articulate its reasons for deciding not to limit the guardianship or establish arrangements for a transition to the mother's home.

[¶12]  The mother timely appealed from the judgment.  18-A M.R.S. § 1-308 (2015); M.R. App. P. 2.

## II.  DISCUSSION

[¶13]  The mother argues that the court (A) misunderstood her testimony as being self-contradictory and (B) violated her due process rights by awarding a full guardianship to the paternal grandparents based on findings that were insufficient to demonstrate parental unfitness.

A.    The Mother's Testimony

[¶14]  We first address the mother's argument that the court misunderstood her testimony as being inconsistent, which demonstrably affected the court's assessment of her overall credibility.  She contends that her testimony was meant

6

to convey that the child had run away three times—twice from the mother's home and once from the father's home.[3]

[¶15] A probate court's findings in support of a guardianship, reached by clear and convincing evidence, are reviewed for clear error. *Guardianship of Jewel M.* (*Jewel II*), 2010 ME 80, ¶ 47, 2 A.3d 301. A finding of fact is clearly erroneous if there is no competent evidence in the record to support it, *see Guardianship of Johnson*, 2014 ME 104, ¶ 19, 98 A.3d 1023; if "the fact-finder clearly misapprehends the meaning of the evidence," *Guardianship of Jewel M.* (*Jewel I*), 2010 ME 17, ¶ 14, 989 A.2d 726; or if the finding is so contrary to the

---

[3] The following testimony from the mother was admitted:

> Q. We have also heard about a couple of times that Hailey has run away. What times do you remember Hailey running away?
> A. Hailey has run away three times that I can remember for sure, and there may have been another couple of times that were less extravagant where situations weren't as extreme . . . .
> Q. So what about . . . specifically the time when the Freeport police were called, what do you remember about that time?
> A. Hailey was in the . . . guardian of my grandmother who was watching her for me, and it was the evening her dad was supposed to come pick her up at my grandmother's house in Freeport and Hailey refused to go with him; and so she ran across the train track to the movie theater where I was called, from my grandmother and the Freeport police, to come down because they were looking for her.
> Q. And have there been other times when Hailey has run away from [the father's], to your knowledge?
> A. Yes.

She later testified as follows on cross-examination:

> Q. And [you are aware] that she has run away from your home on several occasions?
> A. Not several.
> Q. How many?
> A. Twice.

credible evidence "that it does not represent the truth and right of the case," *id.* In guardianship cases, determinations of the weight, credibility, and significance of evidence are primarily for the trial court as the finder of fact. *Guardianship of Autumn S.*, 2007 ME 8, ¶ 5, 913 A.2d 614.

[¶16] The findings available to us are brief, and the mother has not argued that the actual findings—as opposed to the summarized testimony—are insufficient to support the judgment. Rather, the mother contends that the court misapprehended the evidence in determining that she had contradicted herself in her testimony. *See Jewel I*, 2010 ME 17, ¶ 14, 989 A.2d 726. Reviewing that testimony, we can discern only that the testimony was unclear regarding the number of times that the child had attempted to run away from the mother's home. The trial court was in the best position to weigh the evidence and reach findings, *see In re A.M.*, 2012 ME 118, ¶ 31, 55 A.3d 463, and we cannot conclude on the record before us that the court "clearly misapprehend[ed] the meaning of the evidence" in finding the mother's testimony to be inconsistent, *Jewel I*, 2010 ME 17, ¶ 14, 989 A.2d 726.

B.    Substantive Due Process

[¶17] The mother argues that the court's judgment violated her substantive due process rights because the evidence of unfitness was insufficient for the court to interfere with her parental rights by appointing the grandparents as full

guardians.  She also argues that, even if the government does have a compelling interest, for an infringement on her parental rights to be narrowly tailored to serve that interest, it had to be confined to the creation of a limited guardianship or a guardianship with an arrangement for the child to transition back into the mother's home.  *See Doe I v. Williams*, 2013 ME 24, ¶¶ 65-66, 61 A.3d 718 ("A substantive due process analysis turns on whether the challenged state action implicates a fundamental right . . . .  If state action infringes on a fundamental right or fundamental liberty interest, the infringement must be narrowly tailored to serve a compelling state interest.").  We review the court's unfitness determination and then address the alternatives of a limited guardianship or transitional arrangement.

1.    Unfitness and the Sufficiency of the Evidence

[¶18]   The mother argues that the guardianship statute was applied unconstitutionally because there was no showing of harm that would create a compelling government interest justifying the intrusion into her fundamental parental rights.

[¶19]  "A parent, so long as [she] adequately cares for . . . her children (i.e., is fit), has a firmly-established fundamental liberty interest, protected by the Due Process Clause, to direct and control her child's upbringing."  *Guardianship of Jeremiah T.*, 2009 ME 74, ¶ 22, 976 A.2d 955 (quotation marks omitted).  If parental unfitness has been demonstrated, however, a court may infringe on

parental rights because the State has a compelling interest in protecting the welfare of the child. *See Pitts v. Moore*, 2014 ME 59, ¶¶ 12-14 & n.5, 90 A.3d 1169; *Jewell II*, 2010 ME 80, ¶ 46, 2 A.3d 301; *Jewel I*, 2010 ME 17, ¶ 12, 989 A.2d 726; *cf. Conlogue v. Conlogue*, 2006 ME 12, ¶ 22, 890 A.2d 691. Thus, the State may infringe on the fundamental liberty interest of a parent in the care and custody of a child if the parent is unfit, the infringement on parental rights is in the child's best interest, and the infringement is narrowly tailored to serve the State's compelling interest in protecting the welfare of the child. *See Sparks v. Sparks*, 2013 ME 41, ¶¶ 23-27, 65 A.3d 1223; *Jewell II*, 2010 ME 80, ¶ 7, 2 A.3d 301.

[¶20] The question of whether the guardianship statute, as applied, violates the mother's due process rights depends initially on factual and discretionary determinations. Specifically, the statute is constitutionally applied if (1) the court did not commit clear error in finding that "the parent is currently unable to meet the child's needs and that inability will have an effect on the child's well-being that may be dramatic, and even traumatic, if the child lives with the parent," and (2) the court committed no error or abuse of discretion in finding and determining that "the proposed guardian will provide a living situation that is in the best interest of the child." *Jewel II*, 2010 ME 80, ¶ 7, 2 A.3d 301 (quotation marks omitted). This standard recognizes that, due to constitutional protections of a parent's fundamental rights to the care and custody of her child, the existence of "a

temporarily intolerable living situation must relate to a parent's inability to care for the child," such that "proof of parental unfitness is a required element to support the establishment of a guardianship over the parent's objection." *Id.* ¶ 46 (quotation marks omitted); *see Guardianship of Johnson*, 2014 ME 104, ¶ 19, 98 A.3d 1023.

[¶21] As previously stated, a probate court's findings are reviewed for clear error. *Jewel II*, 2010 ME 80, ¶ 47, 2 A.3d 301. The ultimate determination of the child's best interest based on the factual findings is reviewed for an abuse of discretion, consistent with the review of such determinations in child protection cases, *see In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297, and parental rights and responsibilities matters, *see Pearson v. Wendell*, 2015 ME 136, ¶ 29, 125 A.3d 1149.

[¶22] Here, the court's findings of fact are supported by competent evidence in the record; the judgment does not suggest that the court misapprehended the meaning of the evidence; and the judgment is not so contrary to the credible evidence "that it does not represent the truth and right of the case." *Jewell I*, 2010 ME 17, ¶ 14, 989 A.2d 726; *see Jewell II*, 2010 ME 80, ¶ 46, 2 A.3d 301. The determination of unfitness based on the mother's own conduct and her inability to meet the child's needs is not error given the court's findings that the child had physically harmed herself and had run away from the mother's home, and that the

interactions between the child and her mother had exacerbated the child's unsafe behaviors. Based on these findings and the finding that the child's grandparents are qualified and capable of providing for her care, the court did not abuse its discretion in determining that appointing the grandparents as guardians was in the child's best interest.

[¶23] Accordingly, the substantive due process requirements have been met as long as a limited guardianship or transitional arrangement was not necessary to satisfy the additional constitutional requirement that any infringement on parental rights be narrowly tailored to serve the State's interest in protecting the child's welfare. *See Sparks*, 2013 ME 41, ¶¶ 23-27, 65 A.3d 1223; *Doe I*, 2013 ME 24, ¶ 66, 61 A.3d 718; *Jewel II*, 2010 ME 80, ¶ 7, 2 A.3d 301.

2.     Limited Guardianship and Transitional Arrangement

[¶24] The mother argues that, even if the evidence was sufficient to find an at least temporarily intolerable living situation, the court should have appointed the grandparents as limited—not full—guardians because a change in school could be achieved without infringing on the mother's fundamental right to parent her child. She further contends that a transitional arrangement should have been ordered to enable her to attempt reconciliation with the child and demonstrate that she has remedied any unfitness identified by the court. We review each determination and then consider whether either a limitation on the guardianship or a transitional

arrangement was necessary for the infringement on the mother's parental rights to be narrowly tailored to serve the State's interest in protecting the child's welfare.

### a. Limited Guardianship

[¶25]  "In any case in which a guardian can be appointed by the court, the judge may appoint a limited guardian with fewer than all of the legal powers and duties of a guardian."  18-A M.R.S. § 5-105 (2015).  The concept of limited guardianship serves to effectuate the policy that a court "should only grant to the guardian those powers actually needed."  Unif. Probate Code § 5-206 cmt. (Unif. Law Comm'n amended 2010); *see Guardianship of Collier*, 653 A.2d 898, 901-02 (Me. 1995) (applying this general principle with respect to an incapacitated adult). We review a trial court's determination whether a full or a limited guardianship was in a child's best interest for an abuse of discretion.  *Guardianship of I.H.*, 2003 ME 130, ¶ 19, 834 A.2d 922.

[¶26]  Due to the severity of the child's symptoms when residing with her mother and the child's age at the time of trial, the court did not abuse its discretion in determining that a full guardianship establishing a known and stable home for the child with her grandparents was in the child's best interest.  If the mother were correct that the judgment's sole purpose was to enable the child to attend school in a different municipality, her argument might be persuasive.  Here, however, the court determined that the mother's interactions with the child were creating a

significant risk of harm to the child. Reviewing the judgment as a whole, we conclude that the court committed no abuse of discretion in establishing a full, rather than a limited, guardianship in the grandparents.

   b.  Transitional Arrangement

[¶27] Title 18-A M.R.S. § 5-213 (2015) authorizes a probate court to provide for transitional arrangements for a minor "if the court determines that such arrangements will assist the minor with a *transition* of custody and are in the best interest of the child." (Emphasis added.) Section 5-213 "vests discretion in the Probate Court to decide whether to implement transitional arrangements for a minor under a guardianship." *Guardianship of Stevens*, 2014 ME 25, ¶ 16, 86 A.3d 1197. "Such discretion is not without limits, however. The critical test in determining the propriety of the exercise of judicial discretion is whether, under the facts and circumstances of the particular case, it is in furtherance of justice." *Id.* (quotation marks omitted).

[¶28] Here, the court did not order the child to transition back into her mother's home—a decision that was supported by evidence of the child's age and the severity of her symptoms when living with the mother. The "transition" to the grandparents' home had already occurred in this case. Therefore, the court did not abuse its discretion in deciding not to establish a transitional arrangement.

c.      Narrowly Tailored Judgment

[¶29]  Based on the evidence presented, the court created a full guardianship in the child's grandparents to establish a stable living situation for a then fifteen-year-old child whose interactions with her mother exacerbated the risk that the child would injure herself or run away.  Given the circumstances of this case, the court did not abuse its discretion in granting the petition for full guardianship, and the infringement on the mother's parental rights was narrowly tailored to serve the State's compelling interest[4] in protecting the child from psychological and physical harm.  *See Sparks*, 2013 ME 41, ¶¶ 23-27, 65 A.3d 1223; *Doe I*, 2013 ME 24, ¶ 66, 61 A.3d 718; *Jewel II*, 2010 ME 80, ¶ 7, 2 A.3d 301.  We affirm the court's judgment.

The entry is:

Judgment affirmed.

---

[4]  Because the facts here overwhelmingly support the entry of the guardianship order, we need not discuss further the descriptions of that compelling state interest.  *See Gordius v. Kelley*, 2016 ME 77, ¶ 18, --- A.3d --- (Saufley, C.J., concurring).

**On the briefs and at oral argument:**

Melissa L. Martin, Esq., Pine Tree Legal Assistance, Portland, for appellant mother

Kristina M. Kurlanski, Esq., Ranger & Copeland, P.A., Brunswick, for appellees paternal grandparents

Cumberland County Probate Court docket number 2014-1193
<small>FOR CLERK REFERENCE ONLY</small>