MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 54
Docket:        Yor-16-72
Argued:        September 15, 2016
Decided:       February 24, 2017
Reissued:      March 16, 2017
Corrected:     July 27, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## GUARDIANSHIP OF ALISHA K. GOLODNER

PER CURIAM

[¶1] Daniel Golodner appeals from a judgment of the York County Probate Court (*Longley, J.*) denying his petition to terminate the guardianship of his now fourteen-year-old daughter, Alisha K. Golodner, upon finding that (1) the guardian, Gail Golodner, proved, by clear and convincing evidence, that Daniel is unfit to parent Alisha; and (2) Daniel failed to prove, by a preponderance of the evidence, that termination of the guardianship would be in Alisha's best interest.[1] We affirm the judgment denying Daniel's petition to terminate the guardianship, but we remand the case for the court to reconsider

---

[1] Daniel also appeals from the court's denial of his motion, filed pursuant to Maine Rule of Probate Procedure 60(b) and Maine Rule of Civil Procedure 60(b)(3), (4), and (6), for relief from the judgment appointing Gail as Alisha's guardian. This challenge is grounded on his arguments that the court's decision was based on erroneous evidentiary and discovery rulings and violated his constitutional right to due process. Because his arguments are unpersuasive, we discuss them no further and affirm the court's denial of his motion.

the portion of its order requiring Daniel to pay guardian ad litem (GAL) fees as a sanction.

## I. BACKGROUND

[¶2]  Alisha Golodner was born in Germany in 2003 to Daniel Golodner and Frauke Sawaha.  The family moved to Connecticut and, after Frauke returned to Germany, a Connecticut court awarded Daniel sole legal custody of Alisha in 2006.  In 2010, facing criminal charges and the possibility of jail time, Daniel arranged for Alisha to live in Maine with his recently widowed stepmother, Gail Golodner.  Gail filed, in the York County Probate Court, a petition to be appointed as Alisha's guardian.  After an uncontested hearing, the court (*Bailey, J.*) granted Gail's motion and appointed her as Alisha's full, permanent guardian.  *See* 18-A M.R.S. § 5-204 (2016).  The order made no specific provision for ongoing contact between Daniel and Alisha.[2]

[¶3]  For the first three years of the guardianship, Gail permitted Daniel to have extended visits with Alisha at Gail's home and to speak with his daughter on the telephone.  In late 2013, however, after an altercation between Daniel and Alisha that prompted Gail to call the police, Gail told Daniel that he

---

2  Although Frauke was notified of the proceedings, she did not participate in them and is not a party to this appeal.

was no longer welcome at the home and she denied him contact with Alisha. On June 23, 2014, pursuant to 18-A M.R.S. § 5-212 (2016), Daniel filed a petition to terminate the guardianship, alleging that the "[g]uardian ha[d] denied [him] normal contact rights in an effort to alienate [him] and his family from [Alisha]."

[¶4]  The court (*Nadeau, J.*) appointed a GAL and, on Daniel's motion, entered an interim order in October 2014 providing for ongoing contact between Daniel and Alisha as coordinated by the GAL, including telephone calls twice per week.  The court ordered Gail to "ensure that [Alisha] will speak and listen to [Daniel] during such telephone calls" and authorized Gail to record the calls.

[¶5]  On January 15 and 25, 2016, the court (*Longley, J.*) held a hearing on Daniel's petition to terminate the guardianship.  The court heard testimony from Daniel, Gail, the GAL, and a close friend of Daniel.  Alisha also testified, on the record but outside the presence of the parties and the attorneys.  The court admitted in evidence, inter alia, several recordings of telephone calls between Daniel and Alisha.  On the second day of the hearing, the GAL testified that Daniel had left a voicemail for him after the first day of the hearing accusing the GAL of "slander" and "libel" and threatening to "fil[e] a grievance with the Maine

Bar" depending on "how [the GAL] perform[ed] between now and the end of the trial or the end of the matter."

[¶6] After the hearing, by order dated January 28, 2016, the court denied Daniel's petition to terminate the guardianship upon finding that (1) Gail proved, by clear and convincing evidence, that Daniel is unfit to parent Alisha; and (2) Daniel failed to prove, by a preponderance of the evidence, that termination of the guardianship would be in Alisha's best interest. The court, however, imposed conditions on the guardian, requiring Gail to arrange continued counseling for Alisha, "look for healthy opportunities for [Alisha] to have routine telephone conversations with" Daniel, and ensure that Daniel has reasonable access to Alisha's report cards and extra-curricular information. The court also ordered that Daniel pay fees for work performed by the GAL as "a necessary consequence" for Daniel's threatening conduct toward the GAL.

[¶7] Daniel timely appealed. [3]

---

[3] On February 17, 2017, we were notified that Gail died on February 13, 2017. Daniel filed with us a motion for relief from the Probate Court's order, suggesting that his appeal was moot but asking us to "clarify and settle his status as sole custodian." On February 24, 2017, we issued an opinion denying Daniel's motion for relief and concluding that the substance of Daniel's appeal was moot. *See Guardianship of Golodner*, 2017 ME 31 (withdrawn upon motion for reconsideration by order dated March 16, 2017). Daniel moved for reconsideration pursuant to M.R. App. P. 14(b). For the reasons set forth in our order on that motion, we concluded that the "collateral consequences" exception to the mootness doctrine applies in the unique circumstances of this case. We therefore granted Daniel's motion for reconsideration and withdrew our original opinion, which is replaced by this opinion.

## II. DISCUSSION

[¶8]  Daniel argues that there was insufficient evidence in the record to support the court's denial of his petition to terminate the guardianship, and that the court's decisions denying "transitional arrangements" and ordering payment of the GAL's fees constituted abuses of discretion.  We address his arguments in turn.

### A.    Sufficiency of the Evidence

[¶9]  We review the Probate Court's findings for clear error, which occurs "if there is no competent evidence in the record to support [the finding], if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case."  *Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, 140 A.3d 478 (citations omitted) (quotation marks omitted).  "In guardianship cases, determinations of the weight, credibility, and significance of evidence are primarily for the trial court as the finder of fact."  *Id.*

[¶10]  The Probate Code authorizes "any person interested in the welfare of a [child] . . . [to] petition for removal of a guardian on the ground that removal would be in the best interest of the [child]."  18-A M.R.S. § 5-212(a).  "The petitioner has the burden of showing by a preponderance of the evidence that

termination of the guardianship is in the best interest of the [child]." 18-A M.R.S. § 5-212(d).[4]

[¶11] Although the Legislature has provided no other express criteria, we have determined that where the petitioner is the child's parent, in order to protect the parent's fundamental liberty interest in directing the care and upbringing of his or her child, the court must delve beyond consideration of the child's best interest to consider the petitioning parent's fitness. *Guardianship of Jeremiah T.*, 2009 ME 74, ¶¶ 26-28, 976 A.2d 955; *see Rideout v. Riendeau*, 2000 ME 198, ¶ 12, 761 A.2d 291 ("[T]he best interests of the child standard, standing alone, is an insufficient standard for determining when the State may intervene in the decision making of competent parents." (citing *Troxel v. Granville*, 530 U.S. 57, 67-69 (2000))). We have further held that it is the party opposing termination of the guardianship who bears the burden of proving that the petitioning parent is currently unfit to regain custody of the child. *Guardianship of David C.*, 2010 ME 136, ¶¶ 4, 7, 10 A.3d 684.

---

[4] Daniel appears not to challenge the court's determination that he failed to prove, by a preponderance of the evidence, that termination of the guardianship is in Alisha's best interest. *See* 18-A M.R.S. § 5-212(d) (2016). In any event, we conclude that the court was not compelled by the evidence to find in Daniel's favor on that point. *See Guardianship of Gionest*, 2015 ME 154, ¶ 5, 128 A.3d 1062.

7

[¶12]    Although the Legislature has established the standard of a preponderance of the evidence for addressing the best interest of the child in a proceeding to terminate a guardianship, neither we nor the Legislature has made clear what specific standard of proof the existing guardian must meet in proving the petitioning parent's *unfitness* in order for the guardianship to continue.[5]    Nor has the Legislature defined "fitness" for purposes of termination-of-guardianship cases.  The law in these areas is unsettled and evolving.  *See Guardianship of Reena D.,* 35 A.3d 509, 514-15 (N.H. 2011) (collecting cases and holding that where a guardianship was established by consent, for the court to order continuation of the guardianship over the petitioning parent's objection, the guardian must prove, by clear and convincing evidence, that the guardianship is "necessary to provide for the essential physical and safety needs of the minor" and that terminating it would "adversely affect the child's psychological well-being" (quotation marks omitted)); *see also Tourison v. Pepper*, 51 A.3d 470, 473-74 (Del. 2012) (holding that on a parent's petition, the guardianship must terminate unless the

---

[5] We referred to a preponderance-of-the-evidence standard in *Guardianship of David C.* and cases that followed.  *See Guardianship of David C.*, 2010 ME 136, ¶ 7, 10 A.3d 684; *see also Guardianship of Chamberlain*, 2015 ME 76, ¶ 28, 118 A.3d 229; *Guardianship of Stevens*, 2014 ME 25, ¶ 14, 86 A.3d 1197.  In *Guardianship of David C.*, however, we were concerned primarily with the *allocation of the burden* to prove unfitness as opposed to the standard of proof.  2010 ME 136, ¶¶ 4, 7, 10 A.3d 684.

guardian proves, by clear and convincing evidence, that terminating the guardianship would result in physical or emotional harm to the child); *Boddie v. Daniels*, 702 S.E.2d 172, 174-75 (Ga. 2010) (same); *In re Guardianship of D.J.*, 682 N.W.2d 238, 243-46 (Neb. 2004) (holding that the guardianship must terminate unless the guardian proves, by clear and convincing evidence, that the petitioning parent is either unfit or has forfeited the right to custody).

[¶13] We need not decide the applicable burden in this case because the court in fact applied the more stringent standard of proof—namely, clear and convincing evidence, which is more favorable to Daniel—and the court's findings are supported by the evidence even under that standard of proof. The evidence admitted during the hearing on Daniel's petition to terminate the guardianship amply supports the court's finding, whether by a preponderance of the evidence or by the more stringent standard of clear and convincing evidence, that Daniel is unfit to parent Alisha. That evidence demonstrates that Daniel's interactions with Alisha are dominated by his shouting, insults, threats, and emotional abuse, and have involved physical aggression; that his behavior toward Alisha causes her fear and emotional distress; and that his understanding of her needs is, as the GAL testified, "woefully lacking." Daniel's own testimony at the hearing demonstrates his inability to understand the

harm that he has caused his daughter, or even how his behavior toward Alisha is problematic. On this record, the court's findings do not constitute clear error, and we decline to disturb the court's decision to deny Daniel's petition to terminate the guardianship.

B.      Transitional Arrangements

[¶14]  Daniel next contends that the court abused its discretion by not ordering certain transitional arrangements, such as increased visitation. When the Probate Court "issu[es], modif[ies], or terminat[es] an order of guardianship for a minor," it may also, in its discretion, "provid[e] for transitional arrangements for the minor if the court determines that such arrangements will assist the minor with a transition of custody and are in the best interest of the child." 18-A M.R.S. § 5-213 (2016). We review a court's decision as to whether to implement transitional arrangements for an abuse of discretion. *Guardianship of Stevens*, 2014 ME 25, ¶¶ 16, 20, 86 A.3d 1197.

[¶15]  Contrary to Daniel's contention, this case is not like *Stevens*, where we held both that the Probate Court's finding that the petitioner was unfit was clear error and that the court abused its discretion by refusing to implement transitional arrangements. *Id.* ¶¶ 12, 16-20. Our conclusion was based on the facts that "*all competent evidence at trial demonstrated that [the mother] would*

*be fit to parent [the child] with the assistance of transitional arrangements*, and that the implementation of such arrangements could lead to the termination of the guardianship and the return of [the child] to [the mother]'s custody." *Id.* ¶ 12 (emphasis added); *see id.* ¶¶ 17, 20.

[¶16]   Here, there was no competent evidence at trial suggesting that Daniel will become fit if permitted to engage in transitional services or increased contact with Alisha.  The court decided not to order "a transition," *see* 18-A M.R.S. § 5-213, and that decision is supported by the evidence of Daniel's ongoing difficulty in engaging in respectful communication with Alisha. *See Guardianship of Hailey M.*, 2016 ME 80, ¶¶ 27-28, 140 A.3d 478.  The court acted well within the bounds of its discretion when it declined to order transitional arrangements and instead ordered the guardian to encourage routine telephone contact—a condition on the guardianship that did not exist previously.

C.    GAL Fees as a Sanction

[¶17] Finally, Daniel challenges the portion of the court's order regarding GAL fees.  The court stated, in relevant part:

> Concerning a necessary consequence for [Daniel]'s threat to the [GAL], this [c]ourt also orders that the GAL tally his hours in writing his [r]eport for this [c]ourt and his post-Jan. 15, 2015 hours in fielding [Daniel]'s threatening phone messages and his having to

11

appear in court today as a witness, use his usual professional rate of compensation and add the total resulting amount to his bill, which this [c]ourt orders [Daniel] to pay.

[¶18]  In general, we review an award of fees based on a party's misconduct for an abuse of discretion.  *Wooldridge v. Wooldridge*, 2008 ME 11, ¶ 11, 940 A.2d 1082.  Several aspects of the court's order in this case compromise our ability to undertake meaningful review.  First, the court has not yet entered an order stating the specific amount owed as a sanction.  *See Conservatorship & Guardianship of Ann B. Thomas*, 2017 ME 11, ¶ 10, --- A.3d ---.  Second, the order does not make clear what rate of pay is to be used or what hours are to be compensated.  It is unclear whether the court intended to require Daniel to pay only the fees associated with the specific tasks mentioned (one of which—preparing the GAL report—is unrelated to Daniel's threatening telephone message), or whether it intended to require him to pay for all GAL fees generated throughout the proceedings.[6]

[¶19] Third, the nature of the sanction—the court's source of authority— is also unclear.  We cannot tell, from the order or the transcript of the hearing, whether the court intended to impose the sanction pursuant to its contempt

---

[6] The issue is further confused by the fact that the order appointing the GAL provided that Daniel was to be responsible for one hundred percent of the GAL's fees.

power, *see* M.R. Civ. P. 66, pursuant to its "inherent authority to sanction parties . . . for abuse of the litigation process," *see Cimenian v. Lumb*, 2008 ME 107, ¶ 11, 951 A.2d 817 (quotation marks omitted), or pursuant to some other basis of authority. In any case, in order to protect Daniel's due process rights, *see, e.g.*, *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 15, 728 A.2d 1268, the court should have afforded him an opportunity to respond to the evidence against him that led to the court's sanction. *See* M.R. Civ. P. 66(c), (d) (setting forth procedures, including notice and hearing, that apply when contempt occurs outside the presence of the court); *Guardianship of Isabella Ard*, 2017 ME 12, ¶¶ 17-24, --- A.3d --- (vacating a sanction sounding in contempt where the court did not implement the process required by M.R. Civ. P. 66); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) ("As long as a party receives an appropriate hearing, . . . the party may be sanctioned [pursuant to the court's inherent authority] for abuses of process occurring beyond the courtroom . . . .").

[¶20] Although we otherwise affirm the judgment, we must therefore vacate that portion of the court's order relating to payment of GAL fees and remand the matter for the court to reconsider the issue and for further proceedings, if necessary.

The entry is:

> That portion of the court's order requiring Daniel Golodner to pay guardian ad litem fees as a sanction is vacated and the matter is remanded to the Probate Court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

---

David P. Mooney, Esq. (orally), Portsmouth, New Hampshire, for appellant Daniel Golodner

Dana E. Prescott, Esq. (orally), Prescott Jamieson Murphy Law Group, LLC, Saco, for appellee Gail Golodner

York County Probate Court docket number 2010-0676(1)
FOR CLERK REFERENCE ONLY