MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2019 ME 118
Docket:        Cum-19-10
Argued:        June 11, 2019
Decided:       July 23, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

GUARDIANSHIP OF DONOVAN C.

JABAR, J.

[¶1]  The father of Donovan C. appeals from a judgment of the Cumberland County Probate Court (*Mazziotti, J.*) appointing the child's maternal aunt as his full guardian.  The father contends that the court erred by finding that the father abandoned the child and that it abused its discretion by appointing the maternal aunt as a full guardian and by not providing adequate transitional arrangements.  We disagree and affirm the judgment of the Probate Court.

## I.  BACKGROUND

[¶2]  The following facts stem from the Probate Court's findings and procedural record, and are supported by competent record evidence.  *See Guardianship of Patricia S*., 2019 ME 23, ¶ 2, 202 A.3d 532.

[¶3]  The child was born in December 2007 and was raised by his mother, his maternal grandparents, and his maternal aunt and her husband.  The father

2

did not support, care for, or have any contact with the child while the mother and her family were raising the child. The father was incarcerated in 2008 and in 2009, and is a lifetime registrant as a sex offender. In 2010, the District Court (Portland, *Oram, J.*) entered a paternity order that included a schedule of parental rights and responsibilities. That order granted the mother sole parental rights and required the father to pay weekly child support. In addition, the father was ordered to pay child support arrearages.

[¶4] The mother died on December 13, 2016. Following the mother's death, the maternal grandmother notified the father, who responded by indicating that he would take care of the child. The father applied for and received approximately $6,000 as the child's Social Security survivor benefits. On December 21, 2016, the maternal grandfather and maternal aunt filed a petition to be appointed as the child's co-guardians. The petition was granted and the maternal grandfather and maternal aunt were appointed as the temporary guardians of the child on December 27, 2016. *See* 18-A M.R.S. § 5-207(c) (2018).[1] The father filed an opposition to the petition and appointment. On June 28, 2017, the child's paternal grandparents also filed a

---

[1] All citations herein are to Title 18-A, the Probate Code in effect at the time of oral argument. The Code has been replaced with a new Probate Code codified in Title 18-C, which will become effective September 1, 2019. *See* P.L. 2019, ch. 417.

guardianship petition. While these petitions were pending, the child lived initially with the maternal grandfather and then transitioned into the home of the maternal aunt.

[¶5] By agreement of the parties, the Probate Court entered an interim order on November 29, 2017, establishing weekly telephone contact between the child and his father, and visitation every other Saturday between the child and his paternal grandparents. Although the father engaged in weekly telephone contact with the child, two expert witnesses opined that the phone calls caused the child a significant amount of anxiety.[2]

[¶6] In July, August, and October 2018, the Probate Court held a three-day hearing on the two competing guardianship petitions.[3] In a judgment dated December 12, 2018, the Probate Court found by clear and convincing evidence that the father had abandoned the child and that it was in the best interest of the child for the maternal aunt to be appointed as his guardian. In its order, the Probate Court expressly terminated the contact schedule in the interim order, but allowed the weekly telephone contact between the father

---

[2] The expert witnesses also testified that the telephone contact and in-person visitation between the child and his paternal grandparents caused the child anxiety.

[3] At the outset of the guardianship hearing, the maternal grandfather moved to dismiss his petition to be appointed as guardian of the child, and the Probate Court dismissed his petition without objection from the parties.

4

and the child to continue, and also provided that, if the child expressed a desire to have additional contact with the father, the court would consider modifying the guardianship.

[¶7] The father filed this timely appeal. 18-A M.R.S. § 1-308 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶8] The father asserts that the Probate Court erred by applying Title 22's statutory definition of abandonment, *see* 22 M.R.S. § 4002(1-A) (2018), and that there is insufficient evidence supporting the Probate Court's finding that he had abandoned his child. Additionally, the father contends that the Probate Court abused its discretion by appointing the maternal aunt as a full guardian rather than a limited guardian and by failing to provide sufficient transitional arrangements. *See* 18-A M.R.S. §§ 5-105, 5-201, 5-213 (2018).

[¶9] We review questions of law de novo, *Sparks v. Sparks*, 2013 ME 41, ¶ 19, 65 A.3d 1223, and the Probate Court's factual findings for clear error, *In re Sterling N.*, 673 A.2d 1312, 1314 (Me. 1996). We review the Probate Court's determination regarding the scope of a guardianship and whether to implement transitional arrangements for an abuse of discretion. *See Guardianship of Golodner*, 2017 ME 54, ¶ 14, 157 A.3d 762; *Guardianship of*

*McIntosh*, 2015 ME 95, ¶ 20, 120 A.3d 654. The father did not move for post-judgment findings of fact pursuant to M.R. Prob. P. 52; therefore, we will infer that the Probate Court made all of the necessary findings to support its judgment, to the extent those inferred findings are supported by competent evidence in the record. *See Guardianship of David P.*, 2018 ME 151, ¶ 1, 196 A.3d 896.

A.    Abandonment of the Child

[¶10]  We begin with the Probate Court's finding of abandonment. The father challenges the Probate Court's factual findings and its application of the law to those facts.

1.    Title 22's Definition of Abandonment

[¶11]  Pursuant to the applicable version of the Maine Probate Code, the Probate Court may appoint a guardian for a minor if, inter alia, the Probate Court finds by clear and convincing evidence[4] that (1) the minor's parents' parental rights have been "suspended by circumstance or prior court order" and (2) the court finds that the appointment is in the best interest of the child. *See* 18-A M.R.S. §§ 5-204(a), 207 (2018).  One method of proving that a parent's

---

4    Because an order appointing a guardian pursuant to 18-A M.R.S. § 5-204(a) "severely constrain[s] the right to parent," the applicable standard of proof is clear and convincing evidence. *See Guardianship of Chamberlain*, 2015 ME 76, ¶¶ 30-34, 118 A.3d 229.

6

parental rights have been suspended by circumstance is by demonstrating that the parent has abandoned the child. *See Conservatorship of Justin R.*, 662 A.2d 232, 234 (Me. 1995).

[¶12] Although "abandonment" is not defined in Title 18-A, it is defined in Title 22 as "any conduct on the part of the parent showing an intent to forego parental duties or relinquish parental claims." 22 M.R.S. § 4002(1-A). Contrary to the father's contentions, the Probate Court did not err by applying Title 22's statutory definition of abandonment in this guardianship action. *See In re Sterling N.*, 673 A.2d at 1314-15; *Guardianship of Zachary Z.*, 677 A.2d 550, 553 (Me. 1996); *Conservatorship of Justin R.*, 662 A.2d at 234 (Me. 1995); *In re Krystal S.*, 584 A.2d 672, 674 n.6 (Me. 1991) (citing with approval Title 22's definition of abandonment in a guardianship action involving suspension of parental rights by circumstances of abandonment).

2.    Sufficiency of the Evidence

[¶13] Turning to the father's challenge to the sufficiency of the evidence supporting the Probate Court's finding that the father abandoned the child,

> [w]e review the Probate Court's findings for clear error, which occurs if there is no competent evidence in the record to support the finding, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case.

*Guardianship of Golodner*, 2017 ME 54, ¶ 9, 157 A.3d 762 (alteration omitted) (quotation marks omitted).

[¶14]  The record in this case supports the Probate Court's finding that the father did not have contact with the child until after the death of the mother. In 2010, the father failed to appear at the paternity hearing at which the District Court granted the mother sole parental rights, and the father has never moved to modify that order so that he may have contact with his son.  The record also supports the court's finding that the father did not support the child financially while the mother was alive and had accumulated a child support arrearage of $14,000 as of the guardianship hearing.[5]

[¶15]  Because there is competent evidence in the record to support the Probate Court's finding of abandonment by clear and convincing evidence, the Probate Court did not err in its finding that the father abandoned the child.  *See* 22 M.R.S. § 4002(1-A)(F); *Guardianship of Golodner*, 2017 ME 54, ¶ 9, 157 A.3d 762 ("In guardianship cases, determinations of the weight, credibility, and significance of evidence are primarily for the trial court as the finder of fact."

---

[5]  Following the mother's death, the father applied for and received approximately $6,000 in survivor's benefits from the Social Security Administration for the child, and testified that the funds were placed in a separate account for the child and that none of the money had been spent.  However, during the second day of the hearing, the father was requested by opposing counsel to produce the bank records, which revealed that the father withdrew $3,000 in April 2017 and $2,000 in September 2017.

(quotation marks omitted)); *cf. Guardianship of Thayer*, 2016 ME 52, ¶ 27, 136 A.3d 349. Although the father has had some minimal contact with the child since the mother's death—such as weekly telephone contact—"[a] mere flicker of interest is not sufficient to bar a finding of abandonment." *In re Brianna K.*, 675 A.2d 980, 982 (Me. 1996) (quotation marks omitted).

B.      Limited Guardianship & Transitional Arrangements

[¶16] Lastly, we consider the father's contentions regarding the Probate Court's decision to appoint the maternal aunt as a full guardian—as opposed to a limited guardian—without implementing transitional arrangements.

[¶17] When circumstances permit the appointment of a guardian, the Probate Court may appoint a limited guardianship and specify the duties and legal powers of the guardian. *See* 18-A M.R.S. § 5-105 (2018). "The concept of limited guardianship serves to effectuate the policy that a court should only grant to the guardian those powers actually needed." *Guardianship of Hailey M.*, 2016 ME 80, ¶ 25, 140 A.3d 478 (quotation marks omitted). In determining whether to order a full or limited guardianship, the Probate Court considers what is in the best interest of the child. *See Guardianship of I.H.*, 2003 ME 130, ¶ 19, 834 A.2d 922. When the Probate Court grants a guardianship, it may "enter an order providing for transitional arrangements for the minor if the

court determines that such arrangements will assist the minor with a transition of custody and are in the best interest of the child." 18-A M.R.S. § 5-213. Transitional arrangements, however, are to be used in those cases where a "transition"—i.e., a change in custody—is contemplated.

[¶18] Here, the father did not request that the Probate Court limit any guardianship order it might issue, and he did not suggest any kind of shared custodial arrangement that might have generated transitional arrangements. Instead, the father employed an all-or-nothing approach with regard to the guardianship proceedings. *Cf. Adoption of Riahleigh M.*, 2019 ME 24, ¶ 14 n.9, 202 A.3d 1174. Given the anxiety that the child was experiencing from the telephone contact and the prospect of in-person contact with the father, and considering the healthy and stable environment provided by the maternal aunt and the mother's family who helped raise the child since birth, the Probate Court acted within its discretion by appointing the maternal aunt as a full guardian, by maintaining the weekly telephone contact between the child and the father, and by declining to order transitional arrangements. *See Guardianship of Hailey M.*, 2016 ME 80, ¶¶ 25-28, 140 A.3d 478. Further, competent record evidence demonstrates that a "limited guardianship or transitional arrangement was not necessary to satisfy the additional

constitutional requirement that any infringement on [the father's] parental rights be narrowly tailored to serve the State's interest in protecting the child's welfare." *Id.* ¶ 23; *see also Guardianship of Golodner*, 2017 ME 54, ¶ 16, 157 A.3d 762.

## III.  CONCLUSION

[¶19]  The Probate Court did not err by applying Title 22's statutory definition of abandonment in this guardianship action.  Additionally, there is ample evidence in the record to support the Probate Court's finding of abandonment.  Finally, the Probate Court did not abuse its discretion by appointing the maternal aunt as a full guardian of the child.

The entry is:

Judgment affirmed.

---

Sarah Irving Gilbert, Esq. (orally), Camden Law LLP, Camden, for appellant father

Hesper D. Schleiderer-Hardy, Esq., and Ellsworth T. Rundlett, III, Esq. (orally), Childs, Rundlett & Altshuler, Portland, for appellee maternal aunt

Cumberland County Probate Court docket numbers 2016-1778 and 2016-1778-1
FOR CLERK REFERENCE ONLY